436 P.2d 137

**STATE of Arizona, Appellee,**

v.

**Homer PAYNE and Benny Dixon,
Appellants.**

**No. 2 CA–CR 106.**

Court of Appeals of Arizona.

Jan. 17, 1968.

Rehearing Denied Feb. 27, 1968.
Review Denied April 23, 1968.

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Tucson, for appellee.

Quigley & Lamont, by Daniel K. Lamont Tucson, for appellants.

KRUCKER, Judge.

Defendants appeal from a judgment finding each of them guilty of burglary, first degree, and grand theft.

Some time between the evening of September 13 and the morning of September 14, 1966 an office building on South Campbell Avenue in Tucson was broken into and certain office equipment and tools, including typewriters, calculators, and a posting machine were taken. A gate in the fence in the rear of the building was found to have been broken open. At 6:00 p. m. on September 14, city detectives went to the apartment of one Vera Hammond to serve a bench warrant in a matter unrelated to the crime at issue here. While there, they discovered several pieces of office equipment hidden under a bed. These pieces of office equip-

ment were subsequently identified by the owners as those which were stolen the previous evening. Vera Hammond gave the following testimony in explanation of how the machines came to be in her room:

"THE WITNESS: Bill Smith told Homer Payne and Benny Dixon that Mr. William Dunn was looking for them on a traffic violation.

Q. And then what happened after you arrived at your place with Mr. Smith and Mr. Payne and Mr. Dixon?

A. After we finished this conversation. They had these office machines, Homer Payne had them in the back of his car and they panicked and started taking them out and I said, 'Don't do that. Where did you get these?'

And they said, one of them, I don't remember which one it was said, 'We made a sting last night. We will be back shortly and pick them up.'

Q. When you said, 'Don't do that,' what were they doing with these office machines?

A. Taking them out of the back of the car.

Q. Taking them out of the back of the car?

A. Yes.

Q. Where did they put them?

A. Where did they put them when they were taking them out?

Q. Yes.

A. In my room.

Q. When you said, 'Don't do that,' did you mean you didn't want them to put them in your room?

A. Yes.

Q. Now what is your understanding of the word quote 'sting'?

A. I felt like they were stolen."

The operator of an auto salvage yard testified that on September 14, defendant Dixon approached him at his business and asked if he would be interested in "some, I believe it was Frieden Calculators, and some office equipment." Upon receiving a neg-

ative response, the defendant left. The defendants neither testified nor offered a defense. On the basis of this evidence, the jury returned a guilty verdict from which the defendants appeal.

The first question presented by defendants goes to the sufficiency of the evidence to sustain a verdict of guilty of the crimes charged. They claim that the only evidence tending to show guilt besides the unexplained possession of recently stolen property is, "the impeached and biased testimony of a person having a direct material interest in the outcome of the trial." The defense claimed that since Vera Hammond was awaiting trial on a charge of receiving stolen goods at the time the testimony above was given, that it was unreliable.

 The rule is well established that where the sufficiency of the evidence to support a conviction is an issue, the evidence is to be viewed by the appellate court in the light most favorable to the state, and all reasonable inferences therefrom are to be taken in a most unfavorable manner to the defendants. This court will not substitute its judgment for that of the jury where the verdict finds substantial support in the evidence. State v. Woolery, 93 Ariz. 76 at 87, 378 P.2d 751 (1963); accord, State v. Sorrell, 95 Ariz. 220, 388 P.2d 429 (1964).

 Unexplained possession of recently stolen goods is a circumstance from which the jury might infer the guilt of defendants when supported by sufficient corroborating evidence. State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); Quong Yu v. Territory, 12 Ariz. 183, 100 P. 462 (1909). Possession of recently stolen property is so incriminating that to warrant conviction there need be only slight corroboration in the form of conduct of the defendant tending to show his guilt. People v. De Leon, 236 Cal.App.2d 530, 46 Cal.Rptr. 241 (1965).

 We hold that the testimony of Vera Hammond and the salvage yard operator were sufficient to sustain a verdict of conviction. The question of the credibility of the witnesses' testimony is for the jury,

not for this court. Antone v. State, 49 Ariz. 168, 65 P.2d 646 (1937).

 Defendants next contend that prejudicial error occurred when a witness identified the defendant Dixon as the man he had seen "crossing the street in handcuffs with another man." In State v. Owen, 6 Ariz.App. 24, 429 P.2d 516 (1967), this Court held that for defendant to be seen handcuffed by members of the jury panel did not constitute reversible error absent a showing of actual prejudice by the defense. The facts at hand are considerably less prejudicial and we hold that the trial court did not abuse its discretion in overruling the defense counsel's motion to have the testimony stricken.

 Finally, defendants contended that they were wrongfully convicted of both grand theft and burglary because both charges arose out of the same act, and that A.R.S. § 13–1641 bars prosecution on both charges.[1] This precise question was treated in State v. Hutton, 87 Ariz. 176, 349 P.2d 187 (1960). There the Arizona Supreme Court said:

"Burglary and theft are two separate and distinct acts. To constitute burglary it is not necessary that theft be committed. In this case, it was only necessary that the breaking and entering be made with the intent to commit grand theft. To consummate theft it is essential that after the burglary is completed, the additional act of actually stealing be committed. We have had occasion to construe the aforementioned section of the statute and held in effect that for the section to oper-

ate to prevent double punishment, the two alleged crimes must have identical components. State v. Westbrook, 79 Ariz. 116, 285 P.2d 161, 53 A.L.R.2d 619 (1954). The elements constituting burglary and theft are entirely different One may be committed without the other."[2]

We find no error in the proceedings below and accordingly the judgments and sentences will be affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.

---

1. A.R.S. § 13–1641. Different punishments for same offense; limitation and bar
 "An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

2. Defendant contends that People v. Guarino, 132 Cal.App.2d 554, 282 P.2d 538

(1955) which construed a statute similar to A.R.S. § 13–1641 and which was relied on in State v. Hutton, supra, was expressly overruled in People v. McFarland, 58 Cal.2d 748, 26 Cal.Rptr. 473, 376 P.2d 449 (1962), and that therefore we should follow suit. As an intermediate court we decline to overrule a decision of the Supreme Court of our State. Any reconsideration of the matter must be done by that Court. (Cf. State v. Wood, 7 Ariz. App. 22, 435 P.2d 857, (12/27/67).)