458 P.2d 379

**The STATE of Arizona, Appellee,**

**v.**

**Frank Pallanes OLIVAS and Edward Cruz Olivas, Appellants.**

**No. 2 CA–CR 172.**

Court of Appeals of Arizona.

Sept. 8, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

R. Lamar Couser, Tucson, for appellant Frank Pallanes Olivas.

William H. Tinney, Jr., Tucson, for appellant Edward Cruz Olivas.

MOLLOY, Chief Judge.

The two appellants and another were jointly tried and found guilty of first degree burglary. There was testimony at the trial that two of the codefendants (including one of the appellants) made incriminating statements after arrest, and the most important question raised is whether the other codefendant-appellant against whom no such testimony was offered was entitled to a separate trial under the principles of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The basic facts are as follows. At about 1:40 a. m., on the morning of April 18, 1968, the police were summoned by a neighbor to the vicinity of the Village Inn pizza parlor on 22d Street in the City of Tucson. observing someone inside the darkened building closing a door that was slightly ajar, the officers ordered all persons within to come out. After a short period, the appellant Edward Olivas and another, George Leeth, emerged from the building. Upon entering the restaurant, the police officers found a claw hammer, screwdrivers, a flashlight and a file lying at various places near a cigarette machine, which had apparently been moved away from a wall, and a jukebox, the glass record-holding portion of which had been broken open. Further investigation revealed a loose stack of phonograph records away from the jukebox, a pile of coins on the floor, and a bent chisel and woodshavings near a pinball machine. The officers' search of the premises also revealed the person of the appellant, Frank Olivas, who was found sitting under a table. Frank Olivas was the regular manager of the Village Inn, but the preceding day had been his day off, as well as payday, and he had spent the day drinking and socializing at various places around Tucson, including the Village Inn, where he had eaten a pizza just prior to midnight. The acting manager of the Village Inn, on the night and early morning in question, had closed the establishment at 1:25 a. m., at which time everything was in order and no tools were in the restaurant area. Other facts will be referred to in

connection with the various contentions urged on appeal.

## APPEAL OF EDWARD OLIVAS

After the appellants and George Leeth, who are all cousins, had been jointly charged with the crime of burglary, Edward Olivas moved for a separate trial, alleging that Frank Olivas and George Leeth had made incriminating post-arrest statements which would probably be admissible against them at trial, and that no such statement would be admissible against Edward Olivas. The State resisted the motion, and the motion was denied, both prior to trial and at the trial, when it was renewed. At the trial, the officer who interrogated George Leeth after his arrest testified to the substance of his conversation with Leeth, as follows:

"Q To the best of your recollection what was the conversation that you had with George Leeth at this time?

\*   \*   \*   \*   \*   \*

"A I asked him to tell me about the events earlier in the morning and what had occurred at the Village Inn Pizza Parlor, and he stated that he had been driving around in an automobile and that they parked the automobile at the rear and side of the Village Inn Pizza Parlor and waited until it was closed; that Frank Olivas had a key to the back door of the Village Inn Pizza Parlor; that they waited until everybody left and had a key to open the back door; that they went inside; that Frank found a box of tools and they began opening up the machinery inside the pizza parlor."

The same officer gave the following testimony with respect to his questioning of Frank Olivas:

"Q To the best of your recollection what was the conversation you had at this time?

\*   \*   \*   \*   \*   \*

"A Frank stated that they had been driving around drinking beer and ran out of beer and decided to get some more

from the pizza parlor. They parked their vehicle to the rear of the pizza parlor and to the side of it and waited in the car until everybody had left. That he had been—he was the manager of the pizza parlor and had a key to it. They went to the back door, opened it up, got the tools out and began opening up the machinery. First they went to get beer and they needed money, they ran out of money, and were getting money out of the machines."

The name of Edward Olivas was not mentioned in any of this officer's testimony, although previous testimony established his presence with George Leeth and Frank Olivas at the time, and he was not excluded from the term "they" by any other testimony. During the trial, and in instructions to the jury at the conclusion of the case, the trial judge gave clear and explicit instructions that the admissions of one defendant could not be given probative effect as to the other defendants.[1]

All three of the defendants testified in their own behalf. George Leeth and Frank Olivas denied making any admissions to the interrogating officer. All three defendants testified that they were attempting to fix their automobile in the parking lot adjacent to the Village Inn when they became alarmed by a neighbor with a dog and, using Frank Olivas' key, went into the Village Inn to hide. Edward Olivas, testifying after his counsel indicated that the decision to take the stand was influenced by the admission of the codefendants' statements, stated that he became angry while playing a pinball machine inside the restaurant and kicked a stool which broke the glass portion of the jukebox. There was no satisfactory explanation offered by anyone concerning the presence and location of the tools, money, woodshavings, et cetera, inside the building.

Counsel for Edward Olivas contends that severance should have been granted, that the testimony with regard to the statements made by George Leeth and Frank Olivas

---

1. These instructions are quoted in notes 5 and 6, *infra*.

was prejudicial to him. The contentions are based upon the *Bruton* case, *supra*, in which the United States Supreme · Court overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), and reversed the conviction of one who was implicated by the oral confession of a codefendant. The codefendant in *Bruton* did not take the stand, and was therefore not subject to cross-examination. The Supreme Court, describing the codefendant's statement as "powerfully incriminating" (88 · S.Ct. 1628), reevaluated and discarded the *Delli Paoli* premise that a jury could follow instructions by the trial judge to ignore a codefendant's confession in ascertaining an implicated defendant's guilt. The *Bruton* court held that the implicated defendant was denied his Sixth Amendment right to confront his codefendant. Counsel for Edward Olivas points out, in this connection, that, although both George Leeth and Frank Olivas did take the stand and admitted having a conversation with the interrogating officer, both denied making the incriminating statements attributed to them by the officer, and argues that, under those circumstances, he was effectively denied the right of cross-examination.

*Bruton* has already spawned a sizable progeny, and a comparison of a number of the federal and state decisions considering its application reflects some doubt as to its scope. Most courts, however, have arrived at a conclusion that, to require reversal, there must have been some reasonable possibility of prejudice to the nonconfessing defendant in the admission of an implicating confession of a codefendant. Our own Supreme Court arrived at such a conclusion in Olivas v. Eyman, 104 Ariz. 163, 449 P.2d 942 (1969), where under the facts, the admission of a codefendant's implicating statement was held to be harmless *Bruton* error "beyond a reasonable doubt." (See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This court noted the necessity of prejudice to the defendant in the order enlarging our opinion and denying motion for rehearing in State

v. Hunt, 8 Ariz.App. 514, 522, 447 P.2d 896, 904 (1968).

The requirement of possible prejudice was subsequently made crystal-clear by the United States Supreme Court in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In *Harrington,* the murder conviction of one who had himself admitted that he was present at the scene of the crime was affirmed notwithstanding the admission into evidence of the implicating statements of two codefendants who did not testify The court stated that " * * * on these special facts the lack of opportunity to cross-examine Cooper and Bosby constituted harmless error under the rule of *Chapman*." 89 S.Ct. at 1728 and *see* State v. Salerno, 104 Ariz. 601, 457 P.2d 278 (released July 11, 1969).

■ Applying *Bruton* as qualified by *Harrington,* we are unable to find in this record any appreciable possibility of prejudice to Edward Olivas in his joint trial with Frank Olivas and George Leeth and in the admission of the latters' oral statements through the police officer. Although the word "they" in these statements leaves room for an inclusion of Edward, the word bears ready reference also to only Frank Olivas and George Leeth. The statements cannot by any stretch of the imagination be said to be "powerfully incriminating" as to Edward Olivas. They are essentially statements of the declarant's own personal guilt, without any tendency whatever to discharge any of the declarant's guilt at the expense of Edward Olivas. The right of confrontation which is the basis of the *Bruton* rule is in essence the right to confront an accuser. These statements contain nothing specifically accusing with respect to Edward Olivas.

Without these statements, the case against Edward is devastatingly convincing. Edward Olivas was undisputedly at the scene and within a closed and darkened building where there was found clear evidence of criminal activity. Edward Olivas' defense lacked an individualized quality or a degree of antagonism to the in-

terests of the codefendants which might have infused these statements with prejudice as to him. We have been unable to find among *Bruton's* progeny any decision which indicates reversal is in order on facts such as these.[2] We think the record here points only to a holding that there was no prejudice to Edward Olivas beyond a reasonable doubt.

■■■ We would caution the trial bench not to find in this decision general approval for the holding of joint criminal trials where incriminating statements inculpating codefendants are to be introduced against less than all defendants. Our holding here is confined to the particular facts of this case. Where it is possible to avoid prejudice, there is a policy favoring joint criminal trials,[3] but our Supreme Court has made it clear that *Bruton* is not to be applied in a restrictive manner. State v. Taylor, 104 Ariz. 264, 451 P.2d 312, 315 (1969). *Bruton* clearly curtails *pro tanto* the discretion vested in the trial court under Rule 254, quoted in pertinent part in note 3, *supra.* Whether or not prejudi-

cial and reversible *Bruton* error has occurred is to be determined primarily by the events at trial, and not by what might or might not have been hoped for or anticipated at the time of a pretrial motion for severance. *See* Gray v. United States, 407 F.2d 830, 831 (5th Cir. 1969). The difficulties to be encountered in effectively redacting confessions so as to eliminate reference to a codefendant are many[4] and so long as *Bruton* remains the law of this land, pretrial doubt as to possible prejudice should be resolved in favor of granting a separate trial.

■ Appellant Edward Olivas argues briefly, and necessarily more on the basis of *Delli Paoli* than *Bruton,* that the trial judge's instructions to the jury to disregard the codefendants' statements in determining appellant's guilt were insufficiently specific, like those in Green v. United States, 386 F.2d 953, 957 (10th Cir. 1967). The trial judge instructed the jury on the subject as set forth in the margin both during the trial[5] and at the close of the evidence.[6] In *Green,* the names of the

---

2. *Contrast, e. g.,* People v. Cefaro, 23 N.Y. 2d 283, 296 N.Y.S.2d 345, 244 N.E.2d 42 (1968) ; Cappetta v. State, 218 So.2d 240 (Fla.App.1969).

3. The pertinent court rule, Rule 254 of the R.Crim.P., 17 A.R.S., presently reads in part as follows:
   "When two or more defendants are jointly charged with any offense, whether felony or misdemeanor, they shall be tried jointly, unless the court in its discretion on the motion of the county attorney or any defendant orders separate trials."
   A number of the policy considerations favoring joint criminal trials are set forth in the post-*Bruton* opinion in the case of Parker v. United States, 404 F.2d 1193 at 1196–1197 (9th Cir. 1968). It has been held that separate trials based upon *Bruton* should not be granted in conspiracy cases where the practical effect would be to thwart the prosecution. United States v. Kaufman, 291 F.Supp. 451, 455 (S.D.N.Y.1968) ; *compare* United States v. McCarthy, 292 F.Supp. 937, 945 (S.D.N.Y.1968).

4. *See* the authorities cited in n. 10 of the *Bruton* decision, at 88 S.Ct. 1626–1627.

5. " * * * I want to point out to you in this case that you have heard testimony of the statement made by George Leeth, the first one, and apparently we are going to have here some testimony made by Frank Olivas, and as to any statement by any Defendant, this statement can only be used as to that one particular Defendant and not as any evidence whatsoever as to the other two Defendants. I realize it is difficult for the jury, but this is very important. Anything George Leeth said may only be used in your consideration of this case as to George Leeth. Anything Frank Olivas might say, can only be used as to the guilt or innocence of Frank Olivas, and anything that might have been said, if there is one, a statement made by Edward Olivas, cannot be used in any way against Frank Olivas or against the other one who didn't make the statement. They were not there when the statements were made, and that is the reason for this."

6. "In determining the guilt or innocence of each Defendant in this case, you may not

various codefendants were not referred-to, and the appellate court reversed for lack of a "particularized and repetitive instruction." The instructions here had both characteristics. We hasten to add that, while we may at least thus view the instructions as a "non-negative" factor in assessing the possibility of prejudice here, we do not, as the foregoing discussion indicates, rest our affirmance on them.

## APPEAL OF FRANK OLIVAS

We will first consider Frank Olivas' contention that he was prejudiced under the *Bruton* rule by the admission of the incriminating statement made by George Leeth. It is argued in this connection that Frank Olivas was denied the right to confront George Leeth on cross-examination because Leeth denied making the incriminating statement. *See* Townsend v. Henderson, 405 F.2d 324, 329 (6th Cir. 1968); People v. Scott, 100 Ill.App.2d 473, 241 N.E. 2d 579, 583 (1968).

■ Most of what has been said in connection with Edward Olivas' appeal applies here too, except that there is a direct reference to Frank Olivas in the officer's testimony as to Leeth's statement. If this difference brings us closer to the *Bruton* holding, there is another difference which more than compensates, recommending affirmance. We refer to the testimony of the same officer that Frank Olivas made a statement, substantially to the same effect, incriminating himself and Leeth. In a *Bruton* situation, when there is only the incriminating statement of the codefendant, the trier of fact must be to a substantial degree, concerned with the credibility of the codefendant. But, when substantially the same statement is attributed to

both the codefendant and the defendant, the focus of inquiry naturally comes to rest upon the witness thus accusing the defendant. Under such circumstances, to reverse because the jury might have been influenced by the extrajudicial statement attributed to the codefendant, would be to permit technicality to rule trial practice in violation of constitutional mandate. Ariz. Const. art. 6, § 27, A.R.S. We follow what we consider to be sound precedent in denying the existence of reversible error under *Bruton* when substantially the same or "interlocking" incriminating statements are attributed to both defendants. United States ex rel. Catanzaro v. Mancusi, 40 † F.2d 296, 300 (2d Cir. 1969) (*Bruton* inapplicable where defendant's own confession " * * * interlocks with and supports the confession of * * *" the codefendant); State v. Hopper, 253 La. 439, 218 So.2d 551, 553–555 (1969) ("technical" *Bruton* error nonprejudicial where there are "reciprocally implicating statements"); People v. Rosochacki, 41 Ill.2d 483, 244 N.E.2d 136, 142 (1969); Commonwealth v. Scott, Mass., 245 N.E.2d 415, 419 (1969).

■ It is also urged in connection with the same contention that reversible error was committed when the court failed to redact the testimony as to Leeth's statement so as to delete all reference to Frank Olivas. Reliance is placed in the oft-cited opinion of Chief Justice Traynor in People v. Aranda, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 (1965). While deletion of reference to the one defendant in the statement of a codefendant may on occasion be a practical way to solve a *Bruton* problem, we have difficulty in comprehending how it could have been done here. Witnesses are sworn to tell the truth. To "doctor

consider statements or confessions made by a Defendant as evidence against the other Defendants.

"A statement or confession made by a Defendant is to be considered as evidence only against the Defendant making such statement or confession.

"In this case we had a statement by George Frankin Leeth that is before you for your consideration under the instruc-

tions that I have just given you. That statement may only be used against the Defendant George Franklin Leeth and not against Edward Olivas or Frank Olivas. You also have a statement before you made by Frank Olivas. That statement may only be used in your consideration, as against that one Defendant and not against Edward Olivas or George Leeth."

up" the testimony pertaining to Leeth's statement, so as to delete reference to Frank Olivas, who, according to the statement, was the person who had the key which gave admission, would necessarily have perverted truth. We rest our decision of affirmance on what we have said about nonprejudiciality.

■ The next major contention is that Frank Olivas was incapable of making and did not make an intelligent waiver of his constitutional *Miranda* rights and that any incriminating statements made by him to the interrogating officer must be considered involuntary. The contention is based largely upon the fact that Frank Olivas had a great deal to drink during the day preceding the burglary and that, when he was discovered under a table in the Village Inn his eyes were closed and he was, by present conscious will or otherwise, limp and unresponsive. It is claimed that he could not in such condition appreciate or waive the *Miranda* rights then stated to him by an arresting officer.

Frank Olivas' condition at the time of his apprehension was less than critical, however, in view of the fact that the interrogating officer testified at the voluntariness hearing that he did not interview appellant until some seven and one-half hours later, at 9:30 a.m. The interrogating officer testified that he immediately informed appellant of his rights; that appellant appeared to him reasonably alert and rested, and did not seem to be suffering from intoxication or hangover. Appellant presented no evidence at the voluntariness hearing and, as noted, denied making any of the statements in question in his testimony before the jury.

The trial judge determined on the basis of the evidence presented that Frank Olivas' statement was voluntary. The trial judge's decision was based upon substantial evidence, and it must be upheld. State v. Denton, 101 Ariz. 455, 458, 420 P.2d 930, 933 (1966); State v. Hughes, 104 Ariz. 535, 456 P.2d 393 (filed July 9, 1969). Our ruling on this contention renders un-

necessary discussion of appellant's further assertion that, if the statement was inadmissible he was entitled to a directed verdict of acquittal.

■ Appellant's last contention is that the trial judge wrongfully refused to instruct the jury in the language of unofficial headnote number 2 of State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965), which reads, in requested part, as follows:

"'Aiding and abetting,' under statute providing that all persons aiding and abetting in commission of crime are principals in the crime, means simply that the aider or abettor must assist in the commission of an act constituting offense, either by active participation in it or in some manner advising or encouraging it, and must stand in same relation to the crime as the criminal, approach it from same angle, touch it at same point, and possess criminal intent."

The trial judge instructed the jury on the subject of aiding and abetting in the following terms:

"All persons concerned in the commission of an offense who either directly and actively commit the act constituting the offense, or who knowingly and with criminal intent aid and abet in its commission, or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

"For one person to aid and abet another in the commission of a criminal offense means to knowingly and with criminal intent aid, promote, encourage or instigate by act or counsel, or by both act and counsel, the commission of such offense."

It is appellant's contention that the trial judge, in omitting the "stand in the same relation," "approach," and "touch" language of the *Bearden* case (found in the body of the opinion in the case at 99 Ariz. 3, 405 P.2d 886) eliminated something essential not otherwise contained with the instruc-

tions given, which limited counsel's ability to argue appellant's noncomplicity. We see on merit in the contention. The *Bearden* case was not concerned with jury instructions, but with the sufficiency of evidence to support conviction, which was found to exist. Not all language in judicial opinions is suitable for jury instructions. Quite often an appellate judge reaches for figurative or metaphorical language to dramatize a point which might only be confusing to a literal-minded jury. Such is the case here. We think the trial judge's instruction on aiding and abetting adequately instructed the jury on the subject and afforded counsel every opportunity to argue appellant's noncomplicity. No authority to the contrary has been called to our attention.

The judgments of conviction of both appellants are affirmed.

HATHAWAY and KRUCKER, JJ., concur.