485 P.2d 841

**STATE of Arizona, Appellee,**

v.

**Edwin MIGUEL, Appellant.**

**No. I CA–CR 242.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 15, 1971.

Rehearing Denied July 23, 1971.

**Review Denied Oct. 5, 1971.**

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

**18**

Ross P. Lee, Public Defender, Maricopa County, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

HAIRE, Judge.

Appellant, Edwin Miguel, and one Perkins Scott were charged by separate informations with burglary, first degree, and grand theft. For reasons not here pertinent, the Maricopa County Public Defender, attorney for both defendants, moved to consolidate their cases for trial. The motion was granted, and the trials consolidated. After a jury trial, appellant Miguel was convicted of burglary, first degree, and petty theft, receiving a sentence of not less than five years nor more than ten years on the burglary conviction.

On appeal from this conviction and sentence, Miguel raises questions concerning (1) the admissibility of an extrajudicial statement made by co-defendant Scott which allegedly incriminated Miguel; (2) the denial of effective assistance of counsel due to a conflict of interest between himself and his co-defendant Scott; (3) the admittedly unintentional conduct of the prosecution in attributing Scott's extra-judicial statement to Miguel; and (4) the sufficiency of the evidence to support a conviction of burglary and theft.

The relevant facts are as follows:

On December 23, 1968, the home of Clarence and Irene Smith was burglarized. Among the items later discovered to be missing were an iron and a battery operated radio. The following day, the Smiths were at the Kay Gonzalez Washer Repair Store in Mesa, Arizona. There, Mrs. Smith observed co-defendant Scott attempting to sell an iron which Mrs. Smith recognized as the iron taken in the burglary of her home the previous night. Earlier that same day, Gonzalez had purchased a battery operated radio from the appellant Miguel, which was later identified as the one taken in the burglary of the Smith residence.

Considering first Miguel's contention concerning the admissibility of co-defendant Scott's extra-judicial statement, Scott made the statement to the police that he had received the iron in question from some people in a green 1957 Chevrolet immediately before entering Gonzalez' shop to sell it. Appellant Miguel contends that such an improbable explanation for being in possession of stolen property tends to make the statement inculpatory, although offered by Scott in an attempt to exculpate himself from the crimes under investigation. Miguel next argues that the admission of this statement into evidence at trial violated his sixth amendment right to confront witnesses against him contrary to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In Bruton, the United States Supreme Court held that the admission into evidence of an extra-judicial confession of a non-testifying co-defendant that inculpates another non-declarant defendant constitutes reversible error as to the non-declarant defendant. The constitutional underpinning for the decision is the resulting denial to the non-declarant defendant in a criminal matter of his right to confront the witnesses against him, which arises when the non-declarant defendant is precluded from dispelling on cross-examination the prejudice contained in such a confession by the declarant-co-defendant's election not to testify. Morever, the court considered the prejudice so grave as not to be cured by the clearest and most explicit limiting instructions to the jury to disregard the extra-judicial confession in determining the guilt or innocence of the non-declarant defendant. Arizona has adhered to the doctrine established in Bruton. State v. Taylor, 104 Ariz. 264, 451 P.2d 312 (1969). However, in applying the Bruton doctrine to the case at bar, we find that the extra-judicial statement here involved, even if construed as inculpatory to Scott, fails to make even the most oblique reference to the appellant Miguel, cf. State v. Taylor, supra, 104 Ariz. at 267, 451 P.2d at 315, and therefore cannot possibly link Miguel to any inference of guilt which may be drawn therefrom. The statement was

Scott's explanation of how *he* came to be in possession of stolen property, and while we agree that joint criminal trials can be fraught with peril, it is not every extra-judicial statement offered by one of the defendants therein that Bruton condemns to be excluded. The question raised here has been previously considered by our courts, and we reaffirm the view that "in order for the statement of the co-defendant to be reversible error it must incriminate and inculpate the other defendant." State v. Daugherty, 12 Ariz.App. 366, 368, 470 P.2d 686, 688 (1970). *See also* State v. Olivas, 10 Ariz.App. 285, 458 P.2d 379 (1969). The statement here involved clearly failed to achieve the prohibited effect, and there was therefore no error in admitting it into evidence. In finding that the appellant's first contention cannot be sustained, this Court also attaches great significance to the fact that the evil to be prevented by Bruton, viz. the violation of an accused's right to confront the witnesses against him resulting from a declarant-co-defendant's election not to testify, is not present here because Scott subsequently testified in an effort to repudiate his extra-judicial statement, and was subject to full examination as a result thereof. Nor can we perceive any possible prejudice accruing to Miguel due to any alleged conflict of interest limitation placed upon his defense counsel's examination concerning Scott's extra-judicial statement, since Scott readily repudiated the statement, and offered a second explanation for being in possession of the stolen property which was completely consistent with the one thereafter offered by Miguel. The most unfettered cross-examination by separate and independent counsel could not have accomplished more.

■ Nor do we find any support for Miguel's second contention that he was denied the effective assistance of counsel due to a conflict of interest arising in trial. It is settled in Arizona that before a defendant is entitled to a new trial for reason of a conflict of interest between co-defendants, it is necessary to show "there was in-

deed a conflict of interest between himself and his co-defendants, and that by virtue of that conflict *his own cause*, in some way, was prejudiced." (Emphasis supplied). State v. Pickard, 105 Ariz. 219, 221, 462 P.2d 87, 89 (1969). *See also* State v. Daugherty, *supra*, 12 Ariz.App. at 368, 470 P.2d at 688. Here, Scott did testify. He did not accuse or inculpate Miguel, and he told a story essentially the same as the one thereafter testified to by Miguel. There is no showing of a conflict of interest, and appellant's contention on this issue is without merit.

■ Appellant's next contention concerns the unintentional conduct of the prosecutor in attributing Scott's extra-judicial statement to Miguel during summation. The prosecutor directed a remark to the jury that "they", referring to both defendants, "lied" to the police the day after the burglary. The court thereupon gave the following admonition to the jury:

"The Court: Ladies and gentlemen, in listening to the closing argument of the prosecutor, in the event you interpreted him to say that 'they' referring to both defendants, lied to the police officer the next day, you are instructed to disregard that because there no testimony that the defendant Miguel said anything the next day to the police officers."

The above-quoted admonition was explicit, and could not have been other than fully understood by the jury. As the court in Bruton observed, it is the rare, rather than the common, situation where an inadmissible statement could not be cured by a proper limiting instruction.

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. *'A defendant is entitled to a fair trial but not a perfect one.'*" (Emphasis supplied). (Citations omitted). Bruton v. United States, *supra*, 391 U.S. at 135, 88 S.Ct. at 1627.

**20**

Appellant's last contention attacks the sufficiency of the evidence to support a conviction for burglary and petty theft. *Unexplained* possession of recently stolen goods is a circumstance from which a jury might infer a defendant's guilt *when supported by the slightest corroborative evidence*. State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); State v. Payne, 7 Ariz.App. 43, 436 P.2d 137 (1968). However, possession of recently stolen goods, when corroborated by serious inconsistencies in explanation, *or an explanation that is inherently unlikely*, is sufficient evidence to support the conviction. Murphy v. State of Arizona, 50 Ariz. 481, 73 P.2d 110 (1937); State v. Woody, 7 Ariz.App. 26, 435 P.2d 861 (1967). Here, Miguel testified as to how he came into possession of the stolen property in an effort to explain this fact to the jury, and after reviewing the explanation given we cannot say that a jury could not find the proffered explanation inherently unlikely. Miguel testified that while in an intoxicated state he had lost a shoe somewhere in an area adjacent to the Smith residence where he had been wandering about. Later that evening, he said he and Scott were walking down an alley behind the Smith residence looking for his shoe when they observed a number of teenage boys running away. There, they discovered the iron and radio in question, and being in need of funds attempted to sell the articles the following day. Whether the above explanation is inherently unlikely was a fact for the jury to determine, and we will not tamper with that determination. The jury, and not this Court, had the benefit of an opportunity to evaluate the demeanor of the witness in making such a determination.

The judgment is affirmed.

JACOBSON, P. J., and ROBERT C. BROOMFIELD, Superior Court Judge, concur.

*Note*: Judge WILLIAM. E. EUBANK having requested that he be relieved from consideration of this matter, Judge ROB-ERT C. BROOMFIELD, of the Superior Court, was called to sit in his stead and participate in the determination of this decision.