573 A.2d 117

**Christopher John COMSTOCK**

v.

**STATE of Maryland.**

**No. 1328, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 9, 1990.

Stephen P. Krohn and Keith B. Krissoff (Krohn & Krissoff, P.A., on the brief), Annapolis, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before GARRITY, KARWACKI and CATHELL, JJ.

GARRITY, Judge.

We shall be concerned with whether a driver whose vehicle has not made physical contact with another may be considered to have been "involved" in a personal injury "accident" and convicted of leaving its scene.

The appellant, Christopher John Comstock, was convicted in the Circuit Court for Anne Arundel County (Goudy, Jr., J.) of leaving the scene of a personal injury accident, negligent driving, changing lanes when unsafe, and driving a vehicle with unsafe tires. On appeal, he presents the following questions for our consideration:

I. Whether the trial court properly found that the appellant was "involved in an accident" for purposes of the crime of leaving the scene of a personal-injury accident (Transp. Art. § 20–102) after it specifically found that the appellant's vehicle did not strike that of the victim;

II. Whether knowledge of the accident or injury is a necessary element of the crime of leaving the scene of a personal-injury accident; and

III. Whether the evidence was sufficient to support the appellant's conviction of leaving the scene of a personal-injury accident.

## Factual Background

On February 15, 1989, Pamela Kitchen was killed in an automobile accident as she was driving south on Ritchie Highway near its intersection with Arnold Road in Arnold, Maryland. The circumstances surrounding the accident were detailed at trial in the testimony of various eyewitnesses.

Witness John Hopkins, who was driving in the southbound middle lane of Ritchie Highway, observed the appellant's car pass him on the right at what he deemed a fairly high rate of speed, pull into the middle lane and continue "right on across into what was the left lane" without stopping.[1] Hopkins observed that Kitchen's vehicle, also proceeding southbound in the left lane, "slammed on the brakes" and "swerved to the left" to avoid the appellant's

---

1. Southbound Ritchie Highway becomes a three-lane highway shortly before its intersection with Arnold Road and again merges into two lanes shortly thereafter.

approaching car. Kitchen's car continued left into and beyond the median and struck a tractor trailer truck head on as it was traveling northbound on Ritchie Highway. Hopkins stated that after this collision, the appellant did not slow or stop his vehicle.

Witness Thomas Tamburello was driving behind Kitchen's vehicle in the left lane. He also testified that the appellant went from the far right lane to the left lane "without any hesitation," simply passing through the middle lane. He stated that the appellant came "within an eyebrow" of Kitchen's car, before Kitchen maneuvered to the left. Tamburello further related that the noise from the impact of the collision was "quite loud" and that, following the collision, he did not see the brake lights on the appellant's car go on.[2]

Witness Virginia Shay was also traveling southbound in the middle lane and observed the appellant's car pass on the right, cut in front of her, and immediately pull into the left lane without pausing in the middle lane. She stated that she initially thought that the appellant's car had struck Kitchen's car, and testified that "the [appellant's] car straddled both lanes to avoid [Kitchen's] car and went straight, and [Kitchen's] car veered off into the median strip and then slipped into the northbound lane and ran into the tractor trailer." She, too, testified that the noise from the collision was "very loud," and that the appellant continued in the left lane without stopping.

Witness Mike Wetklow was a passenger in the back of the vehicle driven by the appellant. He related that after the appellant drove through the Arnold Road traffic light, he crossed from the far right lane into the left lane. Wetklow stated that he saw Kitchen's car in the left lane

---

2. At the time of the accident, witness Tamburello was employed as a Special Agent with the Secret Service branch of the Department of Treasury. He testified that after witnessing the collision he pursued the appellant's vehicle and was able to ascertain its license tag number, which he reported to the police.

and warned the appellant of it. He stated that the appellant came "pretty close" but did not collide with Kitchen's car.[3] The appellant then "jerked back" into the right lane as Kitchen swerved to the left, lost control of her car and crossed the median strip. He also heard the sound of the collision. He elaborated:

> I heard the crash. I looked back. Saw her car with the truck on the other side of the road across the median strip. Chris slowed down. He asked me what had happened and like if it was his fault. And, I guess I just told him that he just cut her off and she lost control of her car.

Wetklow stated that the appellant slowed down to about 20 miles per hour and pulled over to the side of the road, but did not stop. Wetklow opined that the appellant "just didn't know what to do."

The appellant testified that as he started moving his vehicle into the left lane, he heard witness Wetklow's warning and he immediately turned his car back into the right lane. The appellant recalled Wetklow's saying, "[y]ou almost hit that lady." The following interchange then occurred on cross-examination between the State's Attorney and the appellant:

> Q: Okay, but, Mike [witness Mike Wetklow] told you that there was a car coming and that you shouldn't get in that lane. That might not have been the words, but that's what you understood he was telling you, right?
> A: Right, I pulled back, yes.
> Q: And, he also told you that that was the car that got in the accident?

*    *    *    *    *    *

---

**3.** Officer Scott Pittaway of the Anne Arundel County Police investigated the accident. Based on the description and tag number of the appellant's vehicle given to him by the above witnesses, Officer Pittaway located the vehicle in the appellant's driveway five days after the accident. After examining both the appellant's and victim Kitchen's cars, he concluded that the appellant's vehicle had not actually struck Kitchen's.

A: I didn't know what car, you know, it happened so fast, you know, it was just a loud noise. You know it's not something you hear every day. I didn't know how, you know.

Q: I think in response to [defense counsel's] questioning, you said that he told you that car hit a truck?

A: Yes.

Q: And, that car is the car that you were cutting in front of?

A: Yes.

\* \* \* \* \* \*

Q: Were you curious as to what had happened?

A: Yeah.

Q: Did you do anything as a result of that curiosity?

A: I kept driving in the right lane. And, then heard a noise. And, I said, I was like what was that. And, Mike said that that car hit the truck. I guess he saw that. I started pulling over and . . .

Q: Pulling over in which direction?

A: Onto the shoulder.

Q: Okay.

A: I slowed down and I looked out my window. I looked back and I couldn't see anything.

In finding the appellant guilty of the above-noted offenses, the trial judge concluded as follows:

The incident involved three vehicles going in parallel directions. And, what you did was violate the law and didn't keep a proper lookout and you made an illegal lane change. You made an illegal lane change too close to other vehicles. You caused the vehicle in the left lane to lose control, go left of center, lose control in the median . . . It's just simple negligence yes, gross negligence no.

\* \* \* \* \* \*

There's no evidence of impact between you and the other vehicle. And, of course, no evidence of impact on your car. There is substantial evidence of impact on Ms.

Kitchen's car and for that reason the court finds you heard the impact and had to know that there was a substantial impact, know that personal injuries occurred or beyond a reasonable doubt had occurred.

As I mentioned before there's no damage to your vehicle. The court finds that you did slow down, pull off. The other passenger told you that you cut the vehicle off. The question is not whether you were at fault for the accident, the question is whether you were involved in an accident. And, the Court finds the cutting-off nature of your operation of the vehicle involved you in the incident and that you left the scene of the accident.

I.

■ Maryland's so-called "hit and run" statute, Md. Transp.Code Ann. § 20–102 (1987 Repl.Vol., 1989 Cum. Supp.) provides:

(a) *Stopping vehicle at the scene of accident.*—The driver of each vehicle involved in an accident that results in bodily injury to or death of any person immediately shall stop the vehicle as close as possible to the scene of the accident, without obstructing traffic more than necessary.

(b) *Returning to scene of accident.*—The driver of each vehicle involved in an accident that results in bodily injury to or death of any person immediately shall return to and remain at the scene of the accident until he has complied with § 20–104 [entitled "Duty to give information and render aid"] of this title.

The appellant argues that he was not "involved in an accident" within the meaning of § 20–102, as the evidence indicated, and the trial court found that there was no physical contact between the appellant's and Ms. Kitchen's vehicles. According to the appellant, by failing to require physical contact as an element of the offenses described in § 20–102, the statute is "void for vagueness, in that a driver on the road is left to immediately speculate as to whether or not he is 'involved.'" We disagree.

■ It is clear that penal statutes are to be strictly construed. *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275 (1975). This rule, however, does not suggest that we must construe a statute in the narrowest possible light. Indeed, interpretations of criminal statutes that are "unreasonable, illogical, or inconsistent with common sense are avoided whenever possible." *Jones v. State,* 304 Md. 216, 221, 498 A.2d 622 (1985). In *Fabritz, supra,* Chief Judge Murphy observed on the Court's behalf:

> [I]t is the intention of the Legislature that governs in the construction of all statutes so that penal statutes, like other statutes, are to be fairly and reasonably construed and courts should not, by narrow and strained construction, exclude from their operation cases plainly within their scope and meaning. In the final analysis, in construing any statute requiring construction, courts must consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purposes of the enactment, with the real intention prevailing over the literal intention even though such a construction may seem to be contrary to the letter of the statute.

276 Md. at 422, 348 A.2d 275 (citations omitted).

The sole decision interpreting § 20–102 and other Maryland vehicle laws that is relevant for our purpose was reached in *State Farm Mutual Automobile Insurance Co. v. West,* 149 F.Supp. 289 (D.Md.1957) in which the Court defined the term "accident" as generally relating "solely to occurrences actually resulting in death, or personal injury or property damage." *Id.* at 308. There was no occasion for the Court in *State Farm* to comment on whether the word "occurrences" included both contact and non-contact events.

In *Steen v. State,* 640 S.W.2d 912 (Tex.Cr.App.1982). The defendant steered his pickup truck into a southbound passing lane, forcing a vehicle that was already traveling in that lane into oncoming northbound traffic. Faced with conflicting testimony, the trial court found that the State had failed

to prove an actual collision between the defendant and the victim. Nonetheless, the trial court convicted the defendant of failing to stop and render assistance, under a statute nearly identical in language to that of the Maryland statute in question.[4] The Court of Criminal Appeals of Texas affirmed the sufficiency of the evidence supporting the conviction stating:

> The natural consequence of appellant's actions was the subsequent head-on collision. Regardless of appellant's claimed ignorance of the accident, it is clear that there was sufficient evidence to demonstrate appellant caused the accident. Without ensnarling ourselves in the definition or implications of the term "involved in an accident," we hold that appellant was indeed involved in the collision between [the victim] and the northbound vehicle.

*Id.* at 914.

In a civil context, it is instructive that Maryland courts have consistently refused to interpret contract or statutory terms referring to "accidents" as requiring physical contact. In *State Farm v. Maryland Automobile Insurance Fund*, 277 Md. 602, 356 A.2d 560 (1976), the Court of Appeals held that an insurance policy excluding coverage for accidents that did not involve physical contact was void as against public policy. The Court ruled that, as Md.Code Art. 48A, § 243H(a) (entitled "Types of claims which may be made against Fund") insures drivers against a non-impact phantom driver who causes an accident, and as § 541(c) of Art. 48A prohibits a motor vehicle insurance policy from providing coverage that is less than that provided under the Maryland Accident Insurance Fund (MAIF), State Farm's

---

4. The defendant in *Steen* was convicted under Article 6701d, Section 38(a), Vernon's Ann.Civ.St., which reads:

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40. Every such stop shall be made without obstructing traffic more than is necessary.

exclusion was in violation of § 541(c). *See also Lee v. Wheeler,* 310 Md. 233, 234–35, 528 A.2d 912 (1987), holding that a Maryland insurance policy limiting coverage to accidents involving physical contact is void as applied to accidents occurring outside the State of Maryland.

Again in a civil context, in *Royal Insurance Company v. Austin,* 79 Md.App. 741, 558 A.2d 1247 (1989), we were presented with the issue of whether the undefined term "hit and run" in an automobile insurance policy excluded coverage where there had been no contact between the insured's vehicle and a phantom vehicle. In *Royal,* a truck driven by the appellee was forced off the road by a phantom vehicle which had failed to negotiate a turn and crossed the double yellow line coming into the appellee's lane. In order to avoid striking the phantom vehicle head on, the appellee turned his truck to the right, striking a dirt embankment causing his truck to overturn, thus injuring himself. At no time did the phantom vehicle and the appellee's truck come into contact with one another.

In agreeing with the "vast majority of cases" construing the inclusion of the phrase "hit and run" as requiring insurance coverage even in non-physical contact situations, we relied on *Pin Pin H. Su v. Kemper Ins. Co.,* 431 A.2d 416 (R.I.1981), in which the Court opined:

> In interpreting the language "hit and run," we believe, as did the Supreme Court of Washington, that the term is merely a shorthand colloquial expression that is designed to describe a motorist who has caused, or contributed by his negligence to, an accident and flees the scene without being identified. Thus, there is no inherent connotation that physical contact is an essential part of its definition.

79 Md.App. at 747, 558 A.2d 1247.

The above cases clearly support the proposition that physical contact is not necessary to one's involvement in an accident. We further believe that the legislative intent of § 20–102 is to discourage the driver of a vehicle which has been involved in an injury-causing accident from

abandoning persons who are in need of medical care and to prevent that same driver from attempting to avoid possible liability.  To require physical contact as a prerequisite to involvement, then, would circumvent the purposes we believe § 20–102 was designed to advance.  The construction urged upon us by the appellant would exonerate the many drivers who cause accidents but are not involved in an actual collision, and would further put the victims of such negligent driving at risk of being left injured and perhaps unattended at the scene.  Such an interpretation, to use the language of *Jones, supra,* would be unreasonable, illogical and inconsistent with common sense.

Unquestionably, the collision of Ms. Kitchen's vehicle with the oncoming northbound truck was a natural consequence of the appellant's negligent driving.  The appellant, in every sense of the word, caused this accident.  There was absolutely no basis for him to speculate as to whether he was involved in it.  Accordingly, we hold that the trial court was correct in finding the appellant "involved in an accident" within the meaning of § 20–102, despite the court's contemporaneous finding that the vehicles involved did not collide.

## II. & III.

The appellant next argues that, even assuming physical contact is not a requirement of § 20–102, the evidence was nonetheless legally insufficient to support his conviction for leaving the scene of a personal injury accident.  Specifically, he argues that knowledge of the occurrence of the accident and resulting injury is an element of the offense, and maintains that there was insufficient evidence presented at trial that he knew the accident had occurred.

We agree that knowledge of both the underlying accident and injury is logically and legally necessary for one to be guilty of leaving the scene of a personal injury accident under § 20–102.  In general, whether scienter is a necessary element of a statutory crime is a question of

legislative intent to be answered by a construction of the statute. *McCallum v. State,* 81 Md.App. 403, 413, 567 A.2d 967 (1990).[5] On its face, § 20–102 prescribes no particular mental state. Obviously, however, one cannot stop at or return to the scene of a personal injury accident he does not know has occurred. Cognizance of the accident, then, is implicit in the obligations imposed by the statute. We further note that both the Supreme Court and the Court of Appeals have repeatedly expressed the contemporary view disfavoring strict liability criminal offenses. *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985); *Dawkins v. State,* 313 Md. 638, 650, 547 A.2d 1041 (1988).

Accordingly, we conclude that the mere absence of the word "knowingly" from the language of § 20–102 should not be construed as evidencing a legislative intent to create a strict liability offense. Indeed, a strong majority of state courts that have interpreted hit and run statutes, silent as to mental culpability, have nevertheless held knowledge of the accident to be an element of the crime. *See generally* Annot., 23 A.L.R.3d 497, § 3 (1969 & Supp.1989); 7A Am. Jur.2d, Automobiles and Highway Traffic § 290 (1980 & Supp.1990); *Micinski v. State,* 487 N.E.2d 150 (Ind.1986); *People v. Hager,* 124 Misc.2d 123, 476 N.Y.S.2d 442 (1984); *Commonwealth v. Kauffman,* 323 Pa.Super. 363, 470 A.2d 634 (1983); *State v. Feintuch,* 150 N.J.Super. 414, 375 A.2d 1223 (1977); *People v. Hamilton,* 80 Cal.App.3d 124, 145 Cal.Rptr. 429 (1978). We concur with the view of these courts that, before a defendant can be convicted under a "hit and run" statute, the State must first show knowledge

---

**5.** In *McCallum,* we held *mens rea* to be an element of the crime of driving with a suspended license (Transportation Article, § 16–303). We noted that a violation of § 16–303 could be penalized by incarceration, and found the existence of a potential prison term suggestive that the Legislature did not intend to create a public welfare offense and, therefore, that *mens rea* should be an element of the crime. We note that under § 27–101(c)(14) of the Transportation Code, a person convicted under § 20–102 may be fined $500 and imprisoned for two months.

by the accused of the "hit," and that the "run" or leaving was also knowing.

■ As with any case in which *scienter* is an element, it may be proved circumstantially. The trier of fact may infer from an examination of the circumstances of the event that a defendant knew that an accident occurred or that people were injured. Where conditions were such that the driver should have known that an accident occurred, or should have reasonably anticipated that the accident resulted in injury to a person, the requisite proof of knowledge is present. *See Micinski, supra,* at 153. We note that this interpretation of § 20–102, holding the defendant driver to a "reasonable person" standard as to the fact of accident or injury, has met with approval in numerous jurisdictions. *Touchstone v. State,* 42 Ala.App. 141, 155 So.2d 349 (1963); *Kimoktoak v. State,* 584 P.2d 25 (Alaska 1978); *State v. Blevins,* 128 Ariz. 64, 623 P.2d 853 (App.1981); *State v. Porras,* 125 Ariz. 490, 610 P.2d 1051 (App.1980); *State v. Carpenter,* 334 N.W.2d 137 (Iowa 1983); *State v. Miller,* 308 N.W.2d 4 (Iowa 1981); *State v. Wall,* 206 Kan. 760, 482 P.2d 41 (1971); *Herchenbach v. Commonwealth,* 185 Va. 217, 38 S.E.2d 328 (1946); *State v. Sidway,* 139 Vt. 480, 431 A.2d 1237 (1981). With the above standard articulated, then, we turn to the appellant's third argument.

In reviewing the appellant's claim relating to sufficiency of evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). When a case is tried by the court, as was the one *sub judice,* the judgment of the trial court on the evidence will not be set aside unless clearly erroneous; and we accord great weight to the court's determination regarding credibility. *Jordan v. State,* 72 Md.App. 528, 534, 531 A.2d 1028 (1987); Maryland Rule 8–131(c).

As recited above, the trial court found that the appellant's passenger, witness Wetklow, warned him that he had nearly struck Ms. Kitchen's vehicle in the left traffic lane. The evidence indicated that, in response to this warning, the appellant "jerked back" his vehicle into the right traffic lane. Wetklow further testified that he heard the crash between Kitchen's car and the oncoming truck, after which the appellant slowed down and asked Wetklow what had happened, "like if it was his fault." Wetklow then informed the appellant that he had cut Ms. Kitchen off the highway, and that she had lost control of her vehicle. The appellant himself testified that he had heard the collision, inquired about it, and was told of the accident by Wetklow.

In light of this record, we hold that any rational trier of fact could have found that the appellant knew or should have known that he was "involved in an accident" after he learned that he had forced Kitchen's car off the road due to his lane change. We further hold that, under the circumstances of this case, a rational trier of fact could have found that the appellant was aware or should have been aware of probable injury resulting from the accident. Accordingly, we hold that the evidence was sufficient to support his convictions.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.