[No. 13855-1-III.   Division Three.   December 26, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. BILLY
RAY HUGHES, *Appellant*.

*Arthur J. Bieker*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, for respondent.

SCHULTHEIS, J. — Billy Ray Hughes was drag racing two of his friends when the friends' car left the road and crashed, killing the two men. Mr. Hughes left the scene of the accident. He was convicted of reckless driving and failure to stop, provide aid and information, and report an injury accident as required by RCW 46.52.020. He appeals the latter conviction, based on the absence of any physical contact between the two vehicles. We affirm.

In Benton City on the evening of April 18, 1993, Mr. Hughes agreed to race Michael Parr and Rick Salmonson on Jacobs Road, a two-lane frontage road paralleling Interstate 82 just outside the city. All three men had been drinking. Mr. Hughes led the way out of town; Mr. Parr followed in his Camaro, with Mr. Salmonson as his passenger. Both drivers were speeding as they crossed a bridge and drove under the freeway onto Jacobs Road. Then, they raced side by side, using both lanes and reaching speeds of approximately 90 miles per hour.

Mr. Hughes testified he pulled out of the race first and was trailing the Camaro by about one-half mile when it went off the road. He said he saw sparks, then a cloud of dust, then darkness. He testified he parked on the side of the road and looked for the car for about five minutes, but could not find it. He left, drove to his sister's house and called 911 to report the accident. Mr. Hughes told the operator he was traveling westbound on the freeway when he saw an eastbound car on the frontage road go off the road and into the air. He said he stopped and tried to find

the car, but could not. He refused to give his name to the operator.

Law enforcement officers dispatched to the vicinity of the accident were unable to find the car that night. The wreckage was located the following morning. Both Mr. Parr and Mr. Salmonson had died instantly on impact.

Mr. Hughes was charged with reckless driving, in violation of RCW 46.61.500 and 46.61.530, and with "Failure to Stop and I[D] - Injury Accident," in violation of RCW 46.52.020(1), (3) and (7).[1] He moved to dismiss the second count, arguing the statute contemplates a collision when it describes the duties of a driver "involved in an accident." The court denied the motion and the case was tried to a jury in January 1994. The court refused to give the following instruction proposed by Mr. Hughes: "If you

---

[1]RCW 46.52.020 provides, in relevant part:

"(1) A driver of any vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he has fulfilled the requirements of subsection (3) of this section; every such stop shall be made without obstructing traffic more than is necessary.

". . . .

"(3) Unless otherwise provided in subsection (7) of this section the driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person or damage to other property shall give his name, address, insurance company, insurance policy number, and vehicle license number and shall exhibit his vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any driver for such accident.

". . . .

"(7) If none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (3) of this section, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (1) and (3) of this section insofar as possible on his part to be performed, shall forthwith report such accident to the nearest office of the duly authorized police authority and submit thereto the information specified in subsection (3) of this section."

find that the defendant did not strike the person or property of another with his vehicle, you must acquit the defendant of the charge of failure to stop and ID at the scene of an injury accident." The jury found Mr. Hughes guilty of both offenses. He appeals only the conviction for failure to stop, provide aid and information, and report an injury accident, assigning error to the court's denial of his motion to dismiss the count and to its refusal of his proposed jury instruction.

The issue before us is whether a driver can be "involved in an accident" for purposes of RCW 46.52.020 without physical contact between his vehicle and the person or property of another. Mr. Hughes notes RCW 46.52.020 is the "hit-and-run" statute, and argues it clearly contemplates a collision with a person or property. Citing *State v. Vela*, 100 Wn.2d 636, 673 P.2d 185 (1983) and *State v. Martin*, 73 Wn.2d 616, 440 P.2d 429 (1968), *cert. denied*, 393 U.S. 1081 (1969), he asserts the offense has an element of striking and the mental element of knowledge that there has been a collision. He further argues if the phrase "involved in an accident" is ambiguous and in need of interpretation, we must apply the rule of lenity and construe the statute strictly against the State.

All of the Washington cases citing this statute apparently involved literal hit-and-run circumstances; thus, none have addressed the issue presented in this case. *Martin* and *Vela* do not hold there must be a striking of a person or property before a driver is required to stop, provide information and render aid. *Martin*, 73 Wn.2d at 625, holds knowledge of the accident is an element of the offense, while *Vela*, 100 Wn.2d at 641, holds knowledge that the accident resulted in injury or death is not an element.

■■ Courts should construe statutes sensibly to effect legislative intent and, if possible, avoid unjust and absurd results. *Vela*, 100 Wn.2d at 641. A court gives effect to the legislative purpose of a statute by examining its language as a whole and its legislative history. *Smith v. Showalter*, 47 Wn. App. 245, 248-49, 734 P.2d 928 (1987).

■ Washington's first hit-and-run statute imposed affirmative duties (to stop, assist and report) on any person operating or driving a motor vehicle on a public highway and "coming in contact with any pedestrian, vehicle or other object on such highway." Laws of 1927, ch. 309, § 50, pp. 809-10. In 1937 the Legislature revised the statute, dropping the express contact requirement except when a driver collides with an unattended vehicle. The duties of an operator of a vehicle "which collided with any other vehicle which is unattended" were separated from the duties of an operator of a "vehicle involved in an accident" resulting in the injury to or death of any person, or other property damage, or damage to a vehicle which is driven or attended. Laws of 1937, ch. 189, §§ 133, 134, pp. 917-18. Language amending an unambiguous statute is presumed to be intended to change the law. *Tollycraft Yachts Corp. v. McCoy*, 122 Wn.2d 426, 438, 858 P.2d 503 (1993).

■ The current statutes retain the 1937 distinction: RCW 46.52.010 describes the duties of an operator of a vehicle "which collided with any other vehicle which is unattended" and those of the driver of a vehicle "involved in an accident" resulting only in damage to property on or adjacent to any public highway, while RCW 46.52.020 describes the duties of any driver of any vehicle "involved in an accident" resulting in injury or death, or damage to an attended vehicle, or damage to other property. Harmonizing the two statutes and giving effect to both, we conclude the Legislature did not intend that the duty to stop, identify and render aid in an injury accident be interpreted so narrowly as to attach only to the driver of a vehicle which collided with another; otherwise, it would not have dropped the express contact requirement.

Moreover, Mr. Hughes' interpretation does not serve the underlying rationale of facilitating investigation of accidents, identifying those responsible and providing immediate assistance to those injured. *See Vela*, 100 Wn.2d at 641. Instead, it leads to unjust and absurd results. Under his interpretation, for example, a driver who causes

a serious or fatal accident by turning or passing unsafely and forcing an oncoming car off the road to avoid a head-on collision would have no duty to stop and assist. Similarly, a driver who causes a serious or fatal accident between two other vehicles would also have no duty to stop.

Courts in at least four other states have found that a driver can be "involved in an accident" within the meaning of similar statutes when the driver's actions cause another driver taking necessary evasive action to collide with a third vehicle. *People v. Bammes*, 265 Cal. App. 2d 626, 71 Cal. Rptr. 415 (1968); *Comstock v. State*, 82 Md. App. 744, 573 A.2d 117 (1990); *State v. Petersen*, 17 Or. App. 478, 522 P.2d 912, *aff'd in part and rev'd in part on other grounds*, 270 Or. 166, 526 P.2d 1008 (1974); *Steen v. State*, 640 S.W.2d 912 (Tex. Crim. App. 1982). The court's conclusion in *Comstock*, 573 A.2d at 122, is equally applicable in this case:

> The construction urged upon us by the appellant would exonerate the many drivers who cause accidents but are not involved in an actual collision, and would further put the victims of such negligent driving at risk of being left injured and perhaps unattended at the scene. Such an interpretation. . . would be unreasonable, illogical and inconsistent with common sense.

Finally, we find it instructive that our Supreme Court has rejected Mr. Hughes' position in the civil context of uninsured motorist insurance coverage. In *Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 582, 520 P.2d 1368 (1974) the court construed the uninsured motorist statute, RCW 48.22.030, to require coverage for injuries or damages proximately caused by a hit-and-run vehicle, irrespective of its actual physical contact with the insured's vehicle. The court interpreted the phrase "hit-and-run" as a shorthand colloquial expression describing a scenario in which a vehicle is involved in an accident causing damage and the driver flees the scene; there is no inherent requirement of physical contact. *Id.* at 585.

■ We conclude the Legislature intended to and did broaden the category of drivers subject to the duties imposed by RCW 46.52.020 when it dropped the contact requirement in favor of the phrase "involved in an accident." Therefore, the trial court did not err in refusing Mr. Hughes' proposed instruction. "Involved" is an imprecise term incorporating such concepts as being a part of, contributing to and being a participant. *See, e.g.,* William C. Burton, *Legal Thesaurus* 298 (2d ed. 1992). Whether a driver has been "involved in an accident" is a fact-specific determination to be made on a case-by-case basis. Here, we find the evidence is sufficient to uphold the jury finding that Mr. Hughes was "involved" in the accident.

We affirm.

SWEENEY, A.C.J., MUNSON, J., concur.