26 P.3d 1154

**The STATE of Arizona, Appellant,**

v.

**Robert Anthony TRANI, Appellee.**

**No. 2 CA–CR 00–0091.**

Court of Appeals of Arizona, Division 2, Department B.

May 16, 2001.

Barbara LaWall, Pima County Attorney, By Elizabeth Tyszko, Tucson, for Appellant.

Cooper & Udall, By Laura E. Udall, Tucson, for Appellee.

*OPINION*

HOWARD, Presiding Judge.

¶ 1 Appellant State of Arizona claims the trial court erred by dismissing, on the ground of double jeopardy, the murder prosecution against appellee Robert Trani after a mistrial due to prosecutorial misconduct. We agree that the trial court erred and vacate the dismissal.

**BACKGROUND**

¶ 2 Trani was charged with murder and assault for allegedly ordering the raid of the home of a person who owed him a drug-related debt. The person who owed the debt

was not there during the raid, but one person present at the time was murdered and another was assaulted. It is undisputed that Trani was in California at the time of the raid and did not personally carry out the murder and assault. Because the first jury to which the case had been presented could not reach a verdict, the trial court declared a mistrial and ordered a new trial.

¶ 3 During the second trial, the prosecutor presented the testimony of a witness who had heard Trani threaten to kill the person who owed the debt. On cross examination, defense counsel asked the witness about several violations of her plea agreement, inferring that the witness had fabricated her testimony in order to retain the benefits of the plea agreement. The prosecutor attempted to rehabilitate the witness on redirect by reading from the witness's statement to police which had predated the plea agreement. In doing so, the prosecutor read a question and answer, which in substance stated that Trani had ordered the raid. The answer was based solely on hearsay and the prosecutor stopped reading at that point.

¶ 4 Trani objected to the hearsay, and the prosecutor stipulated that he had read inadmissible hearsay. Trani later moved for a mistrial, which the trial court granted because the inadmissible statement went to the central issue in the case: whether Trani had ordered the raid and murder. Trani then moved to dismiss the indictment on the ground of double jeopardy, alleging the prosecutor was guilty of misconduct and had acted intentionally and with an improper purpose, indifferent to the possibility of a mistrial. Agreeing with Trani, the trial court dismissed the indictment with prejudice.

## DISCUSSION

¶ 5 The state argues the trial court erred by dismissing the indictment on the ground of double jeopardy because of prosecutorial misconduct. We review the trial court's decision for an abuse of discretion. *State v. Covington,* 136 Ariz. 393, 396, 666 P.2d 493, 496 (App.1983). But we note that "a dismissal of an indictment with prejudice on the ground of prosecutorial misconduct is

rare." *State v. Young,* 149 Ariz. 580, 585, 720 P.2d 965, 970 (App.1986).

¶ 6 The trial court must order a mistrial based upon prosecutorial misconduct if the misconduct permeates the entire trial and deprives the defendant of a fair trial. *State v. Atwood,* 171 Ariz. 576, 611, 832 P.2d 593, 628 (1992). But a mistrial based on prosecutorial misconduct generally does not bar a later retrial. *State v. Soloman,* 125 Ariz. 18, 21, 607 P.2d 1, 4 (1980). In *Pool v. Superior Court,* 139 Ariz. 98, 108–09, 677 P.2d 261, 271–72 (1984), however, our supreme court held that if prosecutorial misconduct causes a mistrial, a retrial may be barred by Arizona's Double Jeopardy Clause, Arizona Constitution, article II, § 10, under the following circumstances:

1. Mistrial is granted because of improper conduct or actions by the prosecutor; and

2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and

3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.

(Footnote omitted.)

¶ 7 The second prong of the *Pool* test is at issue here. In determining whether the prosecutor acted intentionally, knowing his conduct to be improper, and in the pursuit of an improper purpose without regard to the possibility of causing a mistrial, the trial court looks to objective factors, including "the situation in which the prosecutor found himself, the evidence of actual knowledge and intent[,] ... any other factors which may give rise to an appropriate inference or conclusion," and "the prosecutor's own explanations of his 'knowledge' and 'intent.'" *Id.* at 108 n. 9, 677 P.2d at 271 n. 9.

¶ 8 In *Pool,* the defendant had been improperly charged under the theft statute and had testified to facts that the state could not

rebut and which, if believed at all, would have required a not guilty verdict. 139 Ariz. at 100–01, 677 P.2d at 263–64. The defendant apparently had dealt well with the prosecutor's initial questions "and the cross-examination moved from the irrelevant and prejudicial to the egregiously improper." *Id.* at 101, 677 P.2d at 264. The prosecutor had then cross-examined the defendant about handling a gun while intoxicated and his drinking habits, characterized the defendant as a " 'cool talker,' a knowledgeable witness and a 'good buddy' of defense counsel," asked the defendant for "his view of evidence received[,] . . . his expectations of evidence that [would] be given," and asked him "to speculate on testimony which might have been given by someone who ha[d] claimed the fifth amendment privilege." *Id.* at 102–03, 109–11, 677 P.2d at 265–66, 272–74. The prosecutor also re-asked questions after proper objections had been sustained. *Id.* at 102, 677 P.2d at 265. The supreme court found the prosecutor's conduct was not "some isolated result of loss of temper, but the cumulative effect of a line of questioning in which the prosecutor posed numerous improper questions resulting in at least two bench conferences and one court admonishment." *Id.* at 106, 677 P.2d at 269. Under those particular circumstances, the court could only conclude:

> [T]he prosecutor intentionally engaged in conduct which he knew to be improper, that he did so with indifference, if not a specific intent, to prejudice the defendant. The purpose, so far as we can conclude from the record and in the absence of any suggestion of proper purpose from the State, was, at best, to avoid the significant danger of acquittal which had arisen, prejudice the jury and obtain a conviction no matter what the danger of mistrial or reversal.

*Id.* at 109, 677 P.2d at 272.

¶ 9 In *State v. Hughes,* 193 Ariz. 72, ¶ 31, 969 P.2d 1184, ¶ 31 (1998), the court found the same prosecutor's misconduct as egregious as it had been in *Pool.* The prosecutor once again engaged in a pattern of misconduct that permeated the entire trial. Our supreme court characterized the prosecutor's rebuttal argument as a "masterpiece of misconduct." *Hughes,* 193 Ariz. 72, ¶ 50, 969 P.2d 1184, ¶ 50. After remand, the trial court dismissed the charges based on double jeopardy. The supreme court upheld the dismissal, stating: " 'the burden of another trial cannot be attributed to defendant's preference to start anew rather than "completing the trial infected by [an] error" and is, rather, attributable to the "state's readiness, though perhaps not calculated intent, to force the defendant to such a choice." ' " *State v. Jorgenson,* 198 Ariz. 390, ¶ 6, 10 P.3d 1177, ¶ 6 (2000), *quoting Pool,* 139 Ariz. at 109, 677 P.2d at 272, (*quoting State v. Kennedy,* 295 Or. 260, 666 P.2d 1316, 1326 (1983)).

¶ 10 When the mistrial is the result of less egregious prosecutorial misconduct, however, appellate courts have rejected claims that the Double Jeopardy Clause bars a retrial. For example, in *State v. Detrich,* 178 Ariz. 380, 385, 873 P.2d 1302, 1307 (1994), the trial court declared a mistrial after one of the state's witnesses had improperly testified that the defendant had invoked his right to remain silent. After a second trial and conviction, the defendant claimed the state's misconduct in the first trial had raised a double jeopardy bar to his second trial. *Id.* Our supreme court disagreed because the prosecutor had not "*deliberately* injected error in the first trial in order to force the defendant to request a mistrial." *Id.* (emphasis in original). *See also State v. Wright,* 112 Ariz. 446, 543 P.2d 434 (1975) (asking witness why he would like to see defendant convicted insufficient to bar retrial); *Covington,* 136 Ariz. at 396, 666 P.2d at 496 (asking about witness tampering that could not be connected to the defendant not sufficient to bar retrial).

¶ 11 Here, the trial court concluded that the prosecutor had acted intentionally and with an improper purpose and that he had been indifferent to the possibility of a mistrial. The court found:

> 7) The situation in which the prosecutor found himself, in this case, was that he was presenting a homicide case based on an accomplice-liability theory which was, from an evidentiary standpoint, thin, and had previously resulted in a jury hung on a 6–6 vote;

8) His already thin case had not been improved by the Court's ruling ... which denied admission of a non-present, non-testifying co-defendant's statement;

9) The witness crucial to this motion to dismiss ... had given a recorded pretrial statement to the police wherein she stated that defendant Trani was indeed culpable, but admitted her knowledge was based on "talk" and "rumor" and was therefore clearly hearsay and inadmissible;

10) At the earlier trial, the prosecutor had questioned [the witness] concerning the exact statement at issue here and had carefully avoided the part of the statement he failed to avoid this time, causing the mistrial;

11) [The prosecutor], a very experienced trial attorney, had to be aware that things were not going well and had in fact not opposed a mistrial motion made earlier by defense counsel, which the Court denied (that motion was not based upon a claim of prosecutorial misconduct);

12) [The prosecutor] knew that the statement of [the witness] which he read before the jury contained inadmissible, prejudicial hearsay which went to the ultimate issue in the case;

13) The purpose expressed by [the prosecutor] for reading the statement, "putting it in context", was neither proper nor allowable and was suggestive of the "indifference to a significant resulting danger of mistrial or reversal" . . . .

¶ 12 For several reasons, we conclude the prosecutor's conduct in this case is more akin to the isolated incident in *Detrich* than the conduct in either *Pool* or *Hughes*. First, the trial court here commented that the evidence against Trani was "thin." But two witnesses connected Trani to the drug trafficking and corroborated that he had been upset about the unpaid debt. And one witness testified that before the raid Trani had threatened to kill the person who owed the debt. According to the prosecutor's opening argument, another witness would have testified Trani had confessed to ordering the raid. The state's case was not so weak that it could not have been won without injecting prejudicial error by reading inadmissable hearsay going

to the ultimate issue. The trial court further noted that the state's case had not been helped by pretrial evidentiary rulings. But the only witness who was not available at this trial but could theoretically have become available for a future trial was not critical according to the prosecutor's argument before the mistrial. Thus, the prosecutor did not find himself in a situation where a mistrial caused by his misconduct would markedly improve the state's position. And he did not, therefore, have a reason to create a mistrial, unlike the prosecutor in *Pool*.

¶ 13 Second, although the prosecutor here committed a clear error in reading to the jury the statement indicating Trani had ordered the attack, the prosecutor was properly reading from the statement to counter Trani's impeachment of the witness. *See* Ariz. R. Evid. 801(d)(1)(B), 17A A.R.S. The prosecutor had informed Trani's counsel of the portion of the statement he intended to read. And he stopped immediately when he realized he had stumbled into an improper area. In light of the prosecutor's actions, the fact that, as the trial court noted, the prosecutor had carefully avoided the improper portion of the statement in the first trial, is insufficient to show that he intentionally and knowingly read the improper portion during the second trial to provoke a mistrial.

¶ 14 Third, although the trial court noted the prosecutor had not opposed Trani's earlier motion for a mistrial, that response, without more, could be attributed as easily to the prosecutor's duty to secure justice as to any improper purpose. *See Hughes*, 193 Ariz. 72, ¶ 33, 969 P.2d 1184, ¶ 33 (prosecutor's duty is to seek justice, not just secure convictions). And the prosecutor did indeed argue against this mistrial motion. Finally, the prosecutor explained that he had mistakenly read the improper portion of the statement. Thus, we disagree with the trial court's conclusion that, based upon an objective standard, the prosecutor intended to cause a mistrial or was indifferent to that possibility. *Pool*.

¶ 15 We do not read *Pool* as prohibiting retrial any time a mistrial is declared or new trial ordered based upon prosecutorial misconduct. In order to justify a mistrial, the prosecutor's conduct must deny the defen-

dant a fair trial. *Atwood.* But an additional, improper intent to infect the trial with prejudicial error must exist, at least implicitly, in order to justify barring a retrial based upon double jeopardy. *Pool.* Here, the objective facts do not indicate the prosecutor intended to force Trani to either finish a trial infected with error or choose a mistrial. He simply erred, and the error was isolated to a single misstep, nothing like the pattern of misconduct that "permeated the trial" in both *Pool* and *Hughes.* We conclude that the trial court abused its discretion.

¶ 16 The order dismissing this case is vacated and the case is remanded for further proceedings.

ESPINOSA, C.J. and DRUKE, J., concurring.