47 P.3d 1131

The STATE Of Arizona, Appellee,

v.

Aleksey A. KOROVKIN, Appellant.

No. 2 CA–CR 2001–0103.

Court of Appeals of Arizona,
Division 2, Department B.

April 30, 2002.

Janet Napolitano, Arizona Attorney General, by Randall M. Howe and Diane Leigh Hunt, Tucson, for appellee.

Denice R. Shepherd, Tucson, for appellant.

## OPINION

ESPINOSA, Chief Judge.

¶ 1 After a jury trial, appellant was convicted of leaving the scene of an accident involving death or serious injury. The trial court suspended imposition of sentence and placed him on probation for four years, a condition of which was a one-year jail term. Appellant raises two issues on appeal, arguing that the trial court should have dismissed the prosecution with prejudice due to prosecutorial misconduct and that there was insufficient evidence to support his conviction. We affirm.

¶ 2 We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the conviction. *State v. Riley,* 196 Ariz. 40, 992 P.2d 1135 (App.1999). The seventeen-year-old appellant, driving a black Camaro, and his codefendant Qualls, driving a silver Honda, sped southbound on Oracle Road well in excess of the posted speed limit, weaving in and out of traffic. The victim, who had been driving his Pontiac north on Oracle, turned left across the southbound lanes ahead of the speeding Camaro and Honda. Appellant managed to avoid the Pontiac; Qualls, traveling between seventy-two and ninety miles per hour, collided with it, killing the victim. Qualls was injured and remained at the scene.

¶ 3 Appellant returned to the area of the collision site, saw that many cars had stopped at the scene, then drove away. He went to his high school and bragged to other students that he had been racing at 120 miles per hour, then went to his job where he also told a coworker he had been racing with a gray car at a speed of "a hundred miles." Appellant telephoned the police from his home the following day and, when they arrived, admitted that he and Qualls had been speeding, although he contended that he had

not exceeded sixty miles per hour. He denied having raced Qualls but admitted Qualls might have been racing him.

¶ 4 Appellant was indicted for leaving the scene of an accident causing death or serious injury, second-degree murder, aggravated assault, and two counts of criminal damage. His first trial was mistried at the outset and a new trial was held. The state dismissed the latter three charges with prejudice. The trial court granted a judgment of acquittal as to the second-degree murder charge. The jury acquitted appellant of the lesser-included offenses of negligent homicide and manslaughter but found him guilty of leaving the scene of an accident.

### Alleged Prosecutorial Misconduct

¶ 5 Appellant contends the trial court should have dismissed the case with prejudice due to the prosecutor's intentional misconduct at the first trial that ended in a mistrial, citing *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984). When a prosecutor intentionally commits misconduct so as to deliberately or indifferently mistry a case for an improper purpose, double jeopardy principles can preclude a retrial. *Id.* We review a trial court's decision whether to dismiss a prosecution with prejudice under this scenario for an abuse of discretion. *State v. Trani*, 200 Ariz. 383, 26 P.3d 1154 (App.2001).

¶ 6 Appellant and Qualls were tried together. Because both Qualls and appellant had made statements about "racing" that were admissible against themselves but, arguably, not against their codefendant, each defendant had a different jury, which allowed for the appropriate screening of inadmissible evidence. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008 (1992). In opening statements made before both juries, the prosecutor stated, "Both defendants admitted racing down Oracle." Each defendant moved for a mistrial, to which the prosecutor responded that he did not believe his statement had violated the *Bruton* rule. When the trial court inquired whether double jeopardy was implicated, appellant's counsel stated, "I have no evidence

that he did that intentionally to take advantage of my client." Qualls's attorney also denied that a double jeopardy issue existed. The trial court declared a mistrial but found no intentional misconduct by the prosecutor. The case was then assigned to a different judge, with whom the parties discussed logistical details for the forthcoming trial at a status conference the day following the mistrial.

¶ 7 Before the second pair of juries was selected, however, appellant moved to dismiss the prosecution with prejudice on the ground of double jeopardy based on the mistrial that had been declared by the previous judge, claiming such relief was warranted because the prosecutor had been accused of committing similar misconduct in other, unrelated cases. The newly assigned trial judge denied the motion after reviewing the transcript of the mistrial, noting that counsel for each defendant had expressed contemporaneous opinions that the prosecutor had not intended to commit misconduct. The judge further stated that he independently had come to the same conclusion. Appellant challenges that ruling.

¶ 8 Under *Pool*, the Double Jeopardy Clause of the Arizona Constitution, article II, § 10, bars a retrial if a mistrial is granted because of improper conduct by the prosecutor that is not merely the result of mistake, negligence, or minor impropriety but, rather, amounts to intentional misconduct pursued for an improper purpose and which causes prejudice to the defendant that cannot be cured other than by declaration of a mistrial. We defer to the trial court's finding that the prosecutor's comment here, if improper, was not intentionally so. *See State v. Rosengren*, 199 Ariz. 112, 14 P.3d 303 (App.2000) (in reviewing trial court's ruling on motion to dismiss, appellate court defers to trial court's findings of fact that are supported by the record and not clearly erroneous). That finding is also implicitly supported by both defendants' initial acquiescence to the continuation of the prosecution.

¶ 9 Moreover, even assuming the prosecutor's comment was improper and in-

**496**

tentional,[1] appellant has failed to show that he suffered any resulting prejudice so as to raise double jeopardy implications. Ordinarily, a defendant who successfully moves for a mistrial is deemed to have consented to the retrial, thereby waiving any double jeopardy claim. *Jones v. Kiger*, 194 Ariz. 523, 984 P.2d 1161 (App.1999). But, double jeopardy principles will bar a retrial when the prosecutor intentionally commits prejudicial misconduct to the state's advantage such as in the face of an impending acquittal, giving the defendant the Hobson's choice of suffering the resulting prejudice or asking for a mistrial in a case he or she might be winning. *See State v. Jorgenson*, 198 Ariz. 390, 10 P.3d 1177 (2000); *Trani*. Under these circumstances, the declaration of a mistrial with a resulting retrial is an insufficient remedy because it rewards the state for the prosecutor's misconduct by giving it a second chance at obtaining a conviction with a new jury. *See Jorgenson; Trani*. Here, however, the prosecutor made the objected—to comment during his opening statement; the mistrial was declared before any witnesses had testified and before appellant had had the opportunity to announce his theory of defense through his opening statement. Appellant's trial had not, therefore, progressed to a point at which the state would benefit from starting the trial anew. *See Trani*. Because appellant was not prejudiced by a mistrial and resulting retrial, it was an appropriate and adequate remedy.

¶ 10 Appellant's generalized and, according to the state, out-of-context claims that the prosecutor committed similar misconduct in other cases are unpersuasive. Retrials are barred under the principles set forth in *Pool* not to punish prosecutorial misconduct, but to safeguard defendants' double jeopardy rights. *Jorgenson*. Although a pattern of misconduct might help establish that a prosecutor intended to cause a mistrial or was indifferent to that possibility in a given case, that principle has no application to a situa-

tion such as the one here, involving, at worst, a single misstep at the beginning of trial, for which the trial court expressly found "the prosecutor had no motivation—much less specific intent to provoke a mistrial." The trial court did not abuse its discretion in denying appellant's motion to dismiss the prosecution. *Trani*.

### Involvement in the Accident

¶ 11 Next, appellant contends that there was insufficient evidence to convict him of leaving the scene of an accident because, although Qualls was involved in the collision, he was not. Appellant was found guilty of violating A.R.S. § 28–661(A), which provides:

> The driver of a vehicle involved in an accident resulting in injury to or death of a person shall:
>
> 1. Immediately stop the vehicle at the scene of the accident or as close to the accident scene as possible but shall immediately return to the accident scene.
>
> 2. Remain at the scene of the accident until the driver has fulfilled the requirements of § 28–663.

Section 28–663, A.R.S., provides in relevant part:

> A. The driver of a vehicle involved in an accident resulting in injury to or death of a person ... shall:
>
> 1. Give the driver's name and address and the registration number of the vehicle the driver is driving.
>
> 2. On request, exhibit the person's driver license to the person struck....
>
> 3. Render reasonable assistance to a person injured in the accident.

At the close of the state's case, appellant moved for a judgment of acquittal on the charge of leaving the scene of an accident on the ground that his car was not "involved" in the accident as contemplated by § 28–661(A). The trial court denied the motion, stating,

---

1. We see little implication of a *Bruton* violation in the prosecutor's general remark. *See State v. Miguel*, 15 Ariz.App. 17, 485 P.2d 841 (1971) (to invoke *Bruton* rule, codefendant's statement must incriminate and inculpate other defendant). Furthermore, the comment appears to have been isolated and incidental. *See Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (prosecutor's reference, in opening statement, to anticipated testimony that did not materialize at trial was not evidence and did not amount to a constitutional violation). The issue, however, was not raised on appeal and is not before us.

"[U]nder the circumstances there is nothing indicated in the statute itself to negate involvement as an accomplice." Appellant also argues that it was legally inappropriate for his conviction to have been based on accomplice liability.

¶ 12 As the state concedes, appellant's conviction for leaving the scene of an accident cannot have been based on accomplice liability under our criminal code. The state may base a defendant's criminal liability for a substantive criminal offense on an accomplice theory if the state is able to show the defendant aided or facilitated the commission of that offense by a principal. *See* A.R.S. §§ 13–301, 13–303. Qualls could not have been a principal here because he did not leave the scene of the collision. Consequently, appellant cannot have been Qualls's accomplice for purposes of § 28–661.

█ ¶ 13 Although appellant characterizes his argument as one of sufficiency of the evidence, it is essentially a question of law: under § 28–661, can appellant be criminally liable as a principal for leaving the scene of an accident when the car he was driving was not physically part of the collision? We review *de novo* questions of law and of statutory construction. *State v. Pinto,* 179 Ariz. 593, 880 P.2d 1139 (App.1994).

¶ 14 In order for appellant to be criminally liable for leaving the scene of an accident as a principal, he must have been "involved" in the accident. Appellant reads the statute to require *physical* involvement in the accident, but the legislature chose not to add such narrowing language. The word "involved" is not defined in Title 28, Chapter 6, nor have the courts defined the word within the meaning of the statute.[2] Statutory provisions "must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law." A.R.S. § 13–104.

█ ¶ 15 We give an undefined word in a statute its ordinary meaning unless it appears from the context or otherwise that the legislature intended a different meaning. And we may refer to an established dictionary to determine the ordinary meaning of the word. *In re Paul M.,* 198 Ariz. 122, 7 P.3d 131 (App.2000). According to Webster's Third New International Dictionary 1191 (1971), "involve" means "entangle, [or] implicate" and "to draw in as a participant." We have no trouble concluding that a driver who races another driver who collides with a third vehicle actively participates in the immediate chain of events culminating in the collision and, by any measure, has been a participant and is implicated and entangled in the accident, notwithstanding any absence of actual physical contact with the struck vehicle.

¶ 16 Other courts have addressed this issue under virtually identical facts and statutes and reached the same conclusion. In *State v. Hughes,* 80 Wash.App. 196, 907 P.2d 336 (1995), the defendant was drag racing two friends in another car which left the highway and crashed, killing its two occupants. He fled the scene and anonymously reported the accident to the police by telephone. The defendant was convicted of violating a Washington statute obligating a driver "involved in an accident" to remain at the scene to provide aid and information and to report the accident. *Id.* at 337 n. 2. He appealed, arguing that he did not fall within the ambit of the statute because there had been no physical contact between his vehicle and the car that had crashed. The court emphasized that the legislature had chosen the broader phrase, "involved in an accident," in contrast to the narrower, "collides with a vehicle," and stated, " 'Involved' is an imprecise term incorporating such concepts as being part of, contributing to and being a participant." *Id.* at 339. The court found the evidence sufficient to support the defendant's conviction based on his being " 'involved' in the accident." *Id.* Similarly, in *State v. Petersen,* 17 Or.App. 478, 522 P.2d 912 (1974), *reversed in part on other grounds,* 270 Or. 166, 526 P.2d 1008 (1974), the defendant was racing a second car that ran through a stop sign and collided with a third vehicle, killing the occu-

---

**2.** In *State v. Rodgers,* 184 Ariz. 378, 381, 909 P.2d 445, 448 (App.1995), Division One of this court held that a driver of a car traveling at least fifty miles per hour out of which a passenger deliberately leapt was " 'involved in an accident,' " but that inquiry focused on the statutory meaning of "accident."

pants of the second car. The court held that these facts were sufficient to support the defendant's conviction for "hit-and-run" under an Oregon statute requiring drivers "involved in an accident" to stop and remain at the scene, notwithstanding that there had been no physical contact between defendant's vehicle and either of the other vehicles. *Id.* at 919, 522 P.2d 912.

¶ 17 Numerous other jurisdictions have held the same. in addressing similar issues. *See People v. Bammes,* 265 Cal.App.2d 626, 71 Cal.Rptr. 415, 420 (1968) (driver who encroached on second vehicle, which swerved and collided with third vehicle, was "involved" in accident between second and third vehicles); *Comstock v. State,* 82 Md.App. 744, 573 A.2d 117 (1990) (same); *see also People v. Chen,* 77 Hawai'i 329, 884 P.2d 392, 401 (Haw.App.1994) (driver who collided with taxi which in turn struck pedestrian was "involved in an accident" with pedestrian); *People v. Oliver,* 242 Mich.App. 92, 617 N.W.2d 721, 724 (Mich.App.2000) (driver who pushed nonrunning second vehicle piloted by second driver was "involved in" an accident when second vehicle veered into traffic, resulting in fatal collision).

¶ 18 Finally, in construing a statute, we also "look to the policy behind [it] and to the evil that it was designed to remedy." *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991). "The primary purpose of A.R.S. § 28–661 is to 'prohibit drivers from seeking to evade civil or criminal liability by escaping before their identity can be established.'" *State v. Powers,* 200 Ariz. 363, ¶ 9, 26 P.3d 1134, ¶ 9 (2001), *quoting State v. Rodgers,* 184 Ariz. 378, 380, 909 P.2d 445, 447 (App.1995).

¶ 19 As for potential civil liability under the facts of this case, we find instructive the following example from the Restatement (Second) of Torts:

> A and B are driving automobiles on the public highway. A attempts to pass B. B speeds up his car to prevent A from passing. A continues in his attempt and the result is a race for a mile down the highway, with the two cars abreast and both traveling a dangerous speed. At the end of the mile, A's car collides with a car driven by C and C suffers harm. Both A and B are subject to liability to C.

Restatement (Second) of Torts § 876 cmt. a, illus. 2(1979). *See also A.E. Korpela, Annotation, Liability of Participant in Unauthorized Highway Race for Injury to Third Person Directly Caused by Other Racer,* 13 A.L.R.3d 431 (1967) (collecting cases in which driver of automobile not physically part of collision who was racing other vehicle that collided with third vehicle also liable for damages); *Gomez v. Hensley,* 145 Ariz. 176, 700 P.2d 874 (App.1984) (genuine issue of material fact, precluding summary judgment, as to whether three drivers had committed tortious act in concert by agreeing to drive trucks together in convoy in excess of speed limits even though only one truck physically involved in collision).

¶ 20 Appellant was also sufficiently involved in the accident to be potentially criminally liable for the victim's death, either as Qualls's accomplice, as demonstrated by the indictment and the state's theory of prosecution in this case, or as a principal. *See State v. Melcher,* 15 Ariz.App. 157, 487 P.2d 3 (App.1971) (although defendant's automobile was not physically involved, defendant could be convicted of vehicular manslaughter in the death of the driver of the second automobile he was racing and in the deaths of the occupants of the third automobile the second automobile struck). Appellant misses the mark when he emphasizes that he was not found guilty of second-degree murder, negligent homicide, or manslaughter. The fact that he was charged by the grand jury for those offenses indicates he was sufficiently "involved" in the accident to expose himself to possible criminal liability for his actions. Under these facts, appellant was clearly exposed to potential civil and criminal liability due to his racing with Qualls on a public road; our construing "involved in an accident" so as to encompass appellant's actions is thus consistent with the purpose of §§ 28–661 and 28–663.

¶ 21 Evidence is sufficient to support a verdict if a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Routhier,* 137

Ariz. 90, 669 P.2d 68 (1983). Based on appellant's statements and the testimony of witnesses who observed appellant's and Qualls's cars on Oracle Road immediately before the collision, a rational juror could have found beyond a reasonable doubt that Qualls and appellant were racing, which established the element of appellant's "involvement" in the accident for purposes of §§ 28–661 and 28–663. This is how we interpret the trial court's discussion of appellant's "involvement as an accomplice" in denying appellant's motion for judgment of acquittal. Even if that was not the trial court's rationale, it nonetheless correctly denied the motion.

¶ 22 Appellant's conviction is affirmed.

JOSEPH W. HOWARD, Presiding Judge, WILLIAM E. DRUKE, Judge, concurring.