NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

FERNANDO CORTEZ, *Appellant.*

No. 1 CA-CR 13-0511

FILED 07-29-2014

_____

Appeal from the Superior Court in Maricopa County
No. CR2012-150561-001
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

Fernando Cortez, Tucson
*Appellant*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**S W A N N**, Judge:

**¶1**        Defendant Fernando Cortez appeals his convictions and sentences for aggravated assault.

**¶2**        This case comes to us as an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Defendant's appellate counsel has searched the record on appeal and found no arguable, nonfrivolous question of law, and asks us to review the record for fundamental error.  *See Anders*, 386 U.S. 738; *Smith v. Robbins*, 528 U.S. 259 (2000); *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999).  Defendant has filed a supplemental brief *in propria persona* in which he raises several issues for appeal.

**¶3**        We have searched the record and considered the issues raised by Defendant.  We affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

**¶4**        In October 2012, Defendant was indicted on one count of aggravated assault against S.F. and one count of aggravated assault against S.R.  Defendant pled not guilty and the matter proceeded to a jury trial.

**¶5**        At trial, the state presented evidence of the following facts. On the afternoon of September 24, 2012, Defendant accused S.R., his on-and-off girlfriend, of having stolen his other girlfriend's vehicle.  The couple began arguing in S.R.'s bedroom but then exited S.R.'s apartment, where Defendant swung a folding knife at S.R.'s friend, S.F., from behind. Defendant stabbed S.F. several times, lacerating his neck, arm, cheek, and forehead.  S.R. pulled Defendant off of S.F., falling with Defendant in the process.  When Defendant and S.R. rose, Defendant swung the knife at S.R. and lacerated her arm.  He then fled, and S.R.'s daughter called 911.

**¶6**        Officers who responded to S.R.'s apartment found S.F. supine and bleeding on the kitchen floor, supported by S.R.  They also

found blood spatter outside of the apartment near S.F.'s vehicle and on the walkway leading into the apartment. A protective sweep of the residence and the area surrounding the vehicle revealed no weapons. S.F. was transported to a hospital and received medical care requiring a two-night stay. Paramedics cleaned S.R.'s wound at the scene.

¶7     Law enforcement soon encountered Defendant walking against traffic on the shoulder of a nearby interstate, and detained him because he matched the description of the person who had stabbed S.F. and S.R. Officers recovered a knife from the area where Defendant had been walking and facilitated a one-on-one identification by S.R.'s daughter. Defendant was then placed under arrest.

¶8     Based on the state's evidence, Defendant moved for judgments of acquittal. The court denied the motion.

¶9     For his case, Defendant testified that he had approached S.F. to ask whether S.F. knew anything about Defendant's girlfriend's missing vehicle, and to tell S.F. to stay out of his disputes with S.R. According to Defendant, he swung at S.F. with a knife only after S.F. pointed a gun at him, and stabbed S.F. repeatedly because he was unable to loosen the gun from S.F.'s grip. Defendant further testified that when S.R. knocked him down from behind, he swung the knife at her before he realized who she was, tried to stop when he did realize, and fled because he was afraid of S.F.'s gun. Defendant presented the testimony of a witness who stated that he had seen a woman push Defendant toward a man who had a gun in his hand, and Defendant's girlfriend testified that S.R. had told her that Defendant had reacted to a gun.

¶10     After considering the evidence and hearing closing arguments, the jury found Defendant guilty on both counts. The jury also found that the state had proven several aggravating factors. With respect to both of the aggravated assaults, the jury found that the state had proven that Defendant was previously convicted of a felony within the ten years preceding the date of the offenses, that the offenses involved the use or possession of a dangerous instrument, and that the offenses were dangerous offenses. The jury further found that with respect to the assault against S.F., the offense involved the infliction of serious physical injury and caused emotional harm to the victim.

¶11     The court entered judgment on the jury's verdicts and, balancing the aggravating factors against mitigating factors, sentenced Defendant to concurrent aggravated prison terms of 9.5 years for the

assault against S.F. and 8.5 years for the assault against S.R., with credit for 291 days of presentence incarceration. Defendant timely appeals.

**DISCUSSION**

I. DEFENDANT'S ARGUMENTS DO NOT IDENTIFY FUNDAMENTAL ERROR.

¶12        In his supplemental brief, Defendant contends that the state acted improperly in several respects. We conclude that none of Defendant's arguments describe fundamental error.

     A.    The State's Failure to Pursue a Domestic Violence Allegation Was Not Error.

¶13        Defendant contends that the state improperly "alter[ed]" the indictment by failing to pursue its allegation that the aggravated assault against S.R. was a domestic violence offense. This, however, was well within the prosecutor's discretion and caused no prejudice to Defendant. We discern no error, much less fundamental error.

     B.    Defendant's *Brady* Claims Are Unsupported.

¶14        Defendant next contends that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that S.F. had previously been charged with a gun-related crime and that S.F.'s urine tested positive for amphetamines at the time he received treatment for his wounds. Defendant also contends that the state failed to disclose its interviews of S.F., and disclosed a recording of the prosecutor's interview of S.R. too late to allow Defendant a reasonable opportunity to review it before deciding whether to accept a plea offer.

¶15        Under *Brady* and Ariz. R. Crim. P. 15.1, the state is required to timely disclose exculpatory evidence. This includes evidence affecting witness credibility. *Giglio v. United States*, 405 U.S. 150, 154 (1972). There is no showing in this case of the prejudicial suppression of material evidence. Defendant provides no support for his contentions that evidence was withheld from him. Further, the record shows that Defendant was able to elicit testimony at trial regarding S.F.'s urine-test results and previous gun ownership. The record also shows that Defendant was provided with a recording of S.R.'s interview well in advance of trial, within two days after it was conducted. And contrary to Defendant's argument, the timing of the interview in relation to the

expiration of the state's first plea offer (others were made in the following months) does not implicate error.

C. The Record Reveals No Prosecutorial Misconduct.

¶16 Defendant finally contends that the state engaged in misconduct because the prosecutor: (1) elicited testimony from S.R. and S.F. that was inconsistent with what they had told the grand jury and police; (2) referred to Defendant's incarceration; (3) went "overboard" when questioning Defendant about his prior felony convictions, thereby prejudicing at least one juror; and (4) misstated the facts in her closing statements. Prosecutorial misconduct will warrant a mistrial if the misconduct "permeates the entire trial and deprives the defendant of a fair trial." *State v. Trani*, 200 Ariz. 383, 384, ¶ 6, 26 P.3d 1154, 1155 (App. 2001). We discern no such misconduct here.

¶17 First, the claimed variations in the victims' testimony pertain to the precise subject matter of Defendant's verbal argument with S.R., whether S.F. was "visiting" or "staying with" S.R., and what S.F. was doing immediately before the incident. These inconsistencies were not material to the determination of guilt. The prosecutor was under no obligation to correct the minor variations, and Defendant had ample opportunity to impeach the victims with their prior statements if he so desired.

¶18 Second, the prosecutor's references to Defendant's incarceration did not require a mistrial. Defendant elicited testimony from his eyewitness that the witness was incarcerated and met Defendant in jail because they "live in the same pod." Later, the state, in cross-examining Defendant's girlfriend, asked the girlfriend whether she was still in a relationship with Defendant and whether "[y]ou visit him in jail." Defendant moved for a mistrial. The court denied the motion but instructed the jury that it was not to consider "testimony that the defendant was incarcerated at some point in time." This limiting instruction was sufficient to cure the prosecutor's improper reference to Defendant's incarceration -- and to negate the effect of Defendant's own presentation of evidence on the matter.

¶19 Third, we find nothing improper in the prosecutor's cross-examination of Defendant regarding his prior felony convictions. Defendant's contention that the prosecutor asked about the convictions multiple times is unsupported by the record. The prosecutor asked about each conviction only once, through a brief series of questions regarding

the dates and locations of each. Defendant next contends that the questions "biased and prejudiced" the jury because his answers led a juror to submit the question of whether the prior offenses, which were committed in California, motivated him to move to Arizona in an attempt to avoid California's "three strikes" law. This question, though not relevant (and therefore not asked), did not demonstrate any bias or prejudice.

¶20 Fourth, we find no fundamental error in the prosecutor's closing statements. Defendant contends that the prosecutor mischaracterized his eyewitness's testimony. The witness testified: "[The man fighting with Defendant] had, it looked to be like a gun. I don't know if it was real or fake or whatnot, but it was -- it resembled a gun," and "it was a gun, whether it was real or not, I'm not sure." In summarizing this testimony, the prosecutor stated that the witness "thought he saw a gun, but he said it wasn't clear." This description was materially faithful to the testimony and did not constitute misconduct. Further, contrary to Defendant's contention, the prosecutor's description of possible limitations on the witness's field of view did not constitute misconduct.

> D. Claims of Ineffective Assistance of Counsel Are Not Properly Before This Court.

¶21 Defendant repeatedly suggests that his trial counsel was deficient. We do not consider claims for ineffective assistance of counsel on direct appeal; they must instead be raised in a petition for postconviction relief under Ariz. R. Crim. P. 32. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002).

II. OUR INDEPENDENT REVIEW OF THE RECORD REVEALS NO FUNDAMENTAL ERROR.

¶22 Our review of the record reveals no fundamental error. Defendant was present and represented at all critical stages. The record shows no evidence of jury misconduct and the jury was properly comprised of 12 jurors. *See* A.R.S. § 21-102(A); Ariz. R. Crim. P. 18.1(a).

¶23 The evidence that the state presented at trial was properly admissible and was sufficient to support Defendant's convictions. Defendant was charged with aggravated assault against each of S.F. and S.R. under A.R.S. §§ 13-1203(A) and -1204(A)(1) or (2), which required the state to prove that Defendant intentionally, knowingly, or recklessly caused physical injury to the victim, and that the injury was serious as

defined in § 13-105(39) or involved Defendant's use of a deadly weapon or dangerous instrument as defined in § 13-105(12) and (15). The state produced evidence that Defendant fought and swung a knife at the victims, cutting them both and causing S.F. to suffer potentially life-threatening injuries. This evidence was sufficient to allow the jury to find Defendant guilty of aggravated assault against both S.F. and S.R. The evidence was also sufficient to support the jury's findings of aggravating factors and dangerousness.

¶24　　　At sentencing, Defendant was given an opportunity to speak and the court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. The court imposed legal sentences for the offenses, *see* A.R.S. §§ 13-704(A), -1204(D), and correctly calculated Defendant's presentence incarceration credit under A.R.S. § 13-712(B).

## CONCLUSION

¶25　　　We have reviewed the record for fundamental error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Accordingly, we affirm Defendant's convictions and sentences.

¶26　　　Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Defendant of the status of this appeal and his future options. *Id.* Defendant has 30 days from the date of this decision to file a petition for review *in propria persona*. *See* Ariz. R. Crim. P. 31.19(a). Upon the court's own motion, Defendant has 30 days from the date of this decision in which to file a motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: gsh