# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2022 Term**

_____

No. 21-0873

_____

**FILED**

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent,**

**V.**

**MICAH A. MCCLAIN,**
**Defendant Below, Petitioner.**

_____

Certified Questions from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Criminal Action No. 21-F-76

**CERTIFIED QUESTIONS ANSWERED**

_____

Submitted: October 18, 2022
Filed: November 17, 2022

J. Michael Benninger, Esq.
Benninger Law, PLLC
Morgantown, West Virginia

Bader C. Giggenbach, Esq.
Giggenbach Legal, PLLC
Morgantown, West Virginia
Attorneys for the Petitioners

Patrick Morrisey, Esq.
Attorney General
Karen C. Villanueva-Matkovich, Esq.
Deputy Attorney General
Charleston, West Virginia
Attorneys for the Respondent

Perri DeChristopher, Esq.
Prosecuting Attorney
Robert J. Zak Jr., Esq.
Assistant Prosecuting Attorney
Monongalia County Prosecuting
Attorney's Office

**Attorneys for Amicus Curiae, Monongalia County Prosecuting Attorney**

**JUSTICE BUNN delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.     "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*. . . ." Syllabus point 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

3.     "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

4.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus point 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

5.	"[W]ords and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syllabus point 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

6.	In the context of West Virginia Code § 17C-4-1 (eff. 2018), the phrase "involved in a crash" is unambiguous.

7.	To be criminally responsible pursuant to West Virginia Code §§ 17C-4-1(a) and (d) (eff. 2018), it is not a requirement that a defendant's vehicle make direct physical contact with the other vehicle or person whose death was proximately caused by the crash.

8.	The determination of whether a defendant is "involved in a crash" pursuant to West Virginia Code § 17C-4-1 (eff. 2018) is a question of fact.

**BUNN, Justice:**

The Circuit Court of Monongalia County certified four questions to this Court seeking clarification as to the application of West Virginia Code § 17C-4-1 (eff. 2018), pertaining to vehicle crashes involving death or personal injuries and the duties and obligations of an individual involved in the crash (commonly referred to as the hit-and-run statute).[1] After exercising our authority to reformulate the certified questions, we answer them as follows:

> 1. Does the Legislature's 2010 amendment of West Virginia Code § 17C-4-1, replacing the word "accident" with "crash," create ambiguity in the statute?
>
> Answer: No.
>
> 2. To be criminally responsible for a violation of West Virginia Code §§ 17C-4-1(a) and (d), must a defendant's vehicle have made direct physical contact with the other vehicle or person whose death was proximately caused by the crash?
>
> Answer: No.
>
> 3. Is the determination of whether a defendant was "involved in a crash" as contemplated by West Virginia Code §§ 17C-4-1(a) and (d) a question of fact?
>
> Answer: Yes.

---

[1] This Court acknowledges the participation in this case of the Monongalia County Prosecuting Attorney, who filed an amicus curiae brief in support of the State of West Virginia. We have considered the arguments presented by this Amicus Curiae in deciding these issues.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This matter arises out of events that occurred on September 5, 2019, when Petitioner Micah McClain was driving a 2012 Peterbilt tractor transporting a bulldozer on a lowboy trailer for his employer. Shortly after 12:00 p.m., he was driving in the eastbound lane of County Route 7, the Mason Dixon Highway, in Monongalia County, West Virginia.[2] An escort vehicle, driven by another employee, drove ahead of Mr. McClain. Directly behind Mr. McClain, Allison Lippert was driving a personal vehicle, and behind her, Stephanie Eddy was also driving a personal vehicle. At the same time, Nicholas Ali was driving a 2018 Peterbilt triaxle dump truck loaded with hot asphalt in the westbound lane of County Route 7. At approximately 12:16 p.m., Mr. Ali passed the escort vehicle.[3] As Mr. Ali's triaxle dump truck passed Mr. McClain's lowboy trailer, the front left tire of Mr. Ali's dump truck and the blade of the bulldozer Mr. McClain was hauling made contact.[4] Mr. Ali instantly lost control of the dump truck, crossed the center line, and collided with Ms. Lippert's vehicle in the eastbound lane. Mr. Ali's dump truck then rolled over and landed on top of Ms. Eddy's vehicle. The hot asphalt poured into Ms. Eddy's

---

[2] County Route 7 in Monongalia County, West Virginia, is a narrow, two-lane road.

[3] Mr. McClain asserts that the driver of the escort vehicle "immediately radioed [Mr.] McClain to warn him of the fast-approaching, oncoming triaxle dump truck."

[4] Mr. Ali and Mr. McClain disagree about who is at fault for the contact; however, it is undisputed that they made contact.

vehicle, and she was trapped. First responders were unable to rescue Ms. Eddy and she died on scene.[5] After the bulldozer on Mr. McClain's lowboy trailer and Mr. Ali's dump truck made contact, Mr. McClain did not stop or park his vehicle; instead, he continued to his intended destination approximately four miles away.[6] Forty to fifty minutes later, Mr. McClain returned to the scene of the incident with his employer supervisors.

Subsequently, on February 26, 2021, a Monongalia County Grand Jury indicted Mr. McClain on one count of leaving the scene of an accident resulting in death in violation of West Virginia Code §§ 17C-4-1(a) and (d).[7] The indictment alleged that Mr. McClain unlawfully, intentionally, and feloniously drove a vehicle involved in a crash resulting in the death of Ms. Eddy; failed to immediately stop and remain at the scene of a crash in which he was involved, or as close to the scene as possible; and failed to immediately return and remain at the scene until he had fully complied with the notification and assistance requirements of West Virginia Code § 17C-4-3. Finally, the indictment asserted that the crash proximately caused the death of Ms. Eddy and that Mr. McClain knew or had reason to believe that another person suffered physical injury in said crash.

---

[5] According to Mr. McClain, Ms. Lippert sustained only minor physical injuries.

[6] The parties dispute whether Mr. McClain could have safely pulled over and parked closer to the scene of crash.

[7] *See infra* for the text of West Virginia Code § 17C-4-1 (eff. 2018).

3

In March 2021, Mr. McClain filed an omnibus pre-trial motion requesting, among other relief, dismissal of the indictment. Mr. McClain argued that West Virginia Code § 17C-4-1(a) was unconstitutionally vague and ambiguous, and in July 2021, filed a supplemental memorandum of law in support of his argument. On the same day, Mr. McClain filed another motion to dismiss the indictment arguing that because his vehicle did not directly make contact with Ms. Eddy's vehicle, he was not "involved in a crash."

On July 19, 2021, Mr. McClain filed a motion to certify questions to this Court indicating that the "dispositive question of law presented" is "whether the Legislature's amendment to W. Va. Code § 17C-4-1 in 2010 by substituting the word 'crash' for the word 'accident' creates an ambiguity as applied to the undisputed facts of this case[.]" The motion further asserted that neither Mr. McClain's tractor nor the lowboy trailer collided with Ms. Eddy's vehicle, and therefore, neither Mr. McClain's tractor nor the trailer was a "'vehicle involved in a crash resulting in injury to or death of [Ms. Eddy].'" The State responded in opposition. The circuit court held a hearing on August 31, 2021, and granted Mr. McClain's motion to certify certain questions to this Court. By order entered on October 18, 2021,[8] the circuit court certified the following questions:

> 1. Does the Legislature's 2010 amendment of West Virginia Code § 17C-4-1, replacing the word "accident" with "crash" create ambiguity in the interpretation of the statute?

---

[8] The circuit court filed an amended certification of questions to this Court on October 26, 2021, correcting a date in the previous order.

4

2. In applying the rule of lenity, does the operative phrase "vehicle involved in a crash" in West Virginia Code §[§] 17C-4-1(a) and (d) [2018], mean that a vehicle must make direct physical contact with or collide with a person or vehicle being driven or occupied by a person resulting in his or her injury or death?

3. Does the phrase "involved in a crash" as contemplated in West Virginia Code §[§] 17C-4-1(a) [and] (d), include a driver who makes contact with a single vehicle and that vehicle makes contact with other vehicles in an unbroken chain resulting in an injury or death to persons in other vehicles?

4. If ambiguity does not exist, should the Court allow the word "crash" as used in West Virginia Code § 17C-4-1, to be given its common, ordinary and accepted meaning? Further, is it a question of fact as to whether or not the driver of any vehicle was involved in a "crash" as contemplated in West Virginia Code §[§] 17C-4-1(a) [and] (d)?

The circuit court answered the first two questions in the negative and the last two questions in the affirmative. We accepted the four certified questions and placed this matter on the docket for argument pursuant to Rule 20 of the West Virginia Rules of Appellate Procedure.[9]

---

[9] At the time the circuit court certified the questions to this Court, there was also a related civil action (No. 20-C-50) pending before a different circuit court judge in Monongalia County. The court in the related civil action also certified two of the four questions to this Court. We consolidated those matters. However, prior to oral argument, Mr. McClain filed an unopposed motion to dismiss the certified questions relating to the civil matter. By order entered on August 18, 2022, we granted the motion.

## II.

## STANDARD OF REVIEW

This matter involves questions of law certified by a circuit court. We have established that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). With this standard in mind, we proceed to answer the certified questions before us.

## III.

## DISCUSSION

Prior to addressing the issues raised, we recognize our authority to reformulate the questions herein certified.

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.*
> . . .

Syl. pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51-1A-4 ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."). Consistent with our authority to do so, we reformulate the questions to be resolved as follows:

> 1. Does the Legislature's 2010 amendment of West Virginia Code § 17C-4-1, replacing the word "accident" with "crash," create ambiguity in the statute?

6

2. To be criminally responsible for a violation of West Virginia Code §§ 17C-4-1(a) and (d), must a defendant's vehicle have made direct physical contact with the other vehicle or person whose death was proximately caused by the crash?

3. Is the determination of whether a defendant was "involved in a crash" as contemplated by West Virginia Code §§ 17C-4-1(a) and (d) a question of fact?

We will address each of these questions in turn.

We will briefly recount the historical background regarding the statute at issue. Prior to 2010, West Virginia Code § 17C-4-1 (eff. 1999), in relevant part, provided that

(a) The driver of any vehicle involved *in an accident* resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and shall remain at the scene of the accident until he or she has complied with the requirements of section three of this article: Provided, That the driver may leave the scene of the accident as may reasonably be necessary for the purpose of rendering assistance to an injured person as required by said section three. Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person violating the provisions of subsection (a) of this section after being involved in an accident resulting in the death of any person is guilty of a felony and, upon conviction thereof, shall be punished by confinement in a correctional facility for not more than three years or fined not more than five thousand dollars, or both.

(Emphasis added). In 2005, a twenty-one-year-old woman named Erin Keener was killed after being hit by a car in an alley. The driver did not stop or return to the scene.

7

In response to the incident involving Ms. Keener, in 2010 the Legislature amended West Virginia Code § 17C-4-1, and the statute became known as "Erin's Law." Important to this matter, the Legislature replaced the word "accident" with "crash" throughout the code section. *See* W. Va. Code § 17C-4-1 (eff. 2010). Additional amendments to West Virginia Code § 17C-4-1 (eff. 2018) were made in 2018, and it currently provides, in relevant part, as follows:

> (a) The driver of any vehicle *involved in a crash* resulting in the injury to or death of any person shall immediately stop the vehicle at the scene of the crash or as close to the scene as possible and return to and remain at the scene of the crash until he or she has complied with the requirements of § 17C-4-3[10] of this code: Provided, That the driver may leave the scene of the crash as may reasonably be necessary for the purpose of rendering assistance to any person injured in the crash, as required by § 17C-4-3 of this code.

> . . . .

> (d) Notwithstanding the provisions of § 17C-4-1(b) or § 17C-4-1(c) of this code, any driver who is involved in a crash that proximately causes the death of another person who intentionally violates § 17C-4-1(a) of this code when he or she knows or has reason to believe that another person has suffered physical injury in said crash is guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned in a state correctional facility for not less than one year nor more than five years, or both fined and imprisoned: Provided, That any death underlying a prosecution under this subsection must occur within one year of the crash.

(Emphasis added).

---

[10] West Virginia Code § 17C-4-3 sets forth the specific information and reasonable assistance the driver is required to provide.

Turning to the certified questions before us, we first consider whether the Legislature's amendment to the statutory language changing "accident" to "crash" creates ambiguity in West Virginia Code § 17C-4-1.[11] Stated differently, this Court is tasked with determining whether the term "crash" is ambiguous. We begin our analysis of this question with a review of this Court's rules of statutory interpretation.

In deciding the meaning of a statutory provision, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt.

---

[11] Mr. McClain's brief initially advances a void for vagueness argument and focuses on several phrases from the statute. Mr. McClain asserts that the phrases "involved in a crash" and "as close to the scene as possible" are void under the vagueness doctrine. He further contends that the Legislature "did not set the boundaries, in place or time, as to where a motorist must stop." However, as noted in the facts herein, Mr. McClain filed a motion to certify questions and a reply in support. In neither his motion to certify nor his reply in support did Mr. McClain ask the circuit court to certify questions regarding the void for vagueness doctrine. Furthermore, the circuit court certified questions only involving ambiguity. As courts have explained, "[a]rguments involving statutory ambiguity and unconstitutional vagueness are related but not identical. . . . Although each raises the issue of a lack of clarity and uncertainty, 'not every ambiguity, uncertainty or imprecision of language in a statutory pattern' rises to the level of being unconstitutionally void for vagueness." *State v. Aboda*, 8 A.3d 719, 722 (Me. 2010) (quoting *State v. Denis*, 304 A.2d 377, 380 (Me. 1973)). *See also State v. Thongsavanh*, 915 A.2d 421, 430 (Me. 2007) (stating that a "statute is not vague simply because we have been called upon to exercise our function of interpreting its plain meaning"). As such, we decline to address the issue of vagueness and focus solely on the issues raised in the questions certified to this Court. *Cf. Pajak v. Under Armour, Inc.*, 246 W. Va. 387, ___ n.4, 873 S.E.2d 918, 922 n.4 (2022) (declining the invitation by a party to answer questions that a federal district court previously refused to certify to this Court); *Williamson v. Greene*, 200 W. Va. 421, 428 n.12, 490 S.E.2d 23, 30 n.12 (1997) (declining to answer a certified question where a party failed to address the issue raised). To the extent Mr. McClain is arguing that the phrase "involved in a crash" is so ambiguous it is unconstitutionally vague, this claim is meritless. As explained herein, the phrase is unambiguous.

9

1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). We have stated that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). *See also State v. Scruggs*, 242 W. Va. 499, 502, 836 S.E.2d 466, 469 (2019) ("'[W]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.' *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995)."). "[A] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *State v. Fuller*, 239 W. Va. 203, 207, 800 S.E.2d 241, 245 (2017) (quotations and citation omitted). In other words, "[a] statute is ambiguous when the statute's language connotes doubtfulness, doubleness of meaning[,] or indistinctness or uncertainty of an expression." *Id.* at 208, 800 S.E.2d at 246 (quotations and citation omitted).

While Mr. McClain asserts that the word "crash" is ambiguous, he fails to set forth specifically what the doubleness or multiple interpretations of "crash" could be.[12]

---

[12] To the extent Mr. McClain argues that the language is ambiguous because one interpretation requires direct contact with the victim and one does not, we find this argument unavailing. As discussed in greater detail below, the plain language of the statute does not require direct physical contact with the victim.

Instead, he argues that without "any expression of legislative intent [for the amendment in wording], legislatively created definition, judicial definition, or definition in Black's Law Dictionary as to the word 'crash,' reasonable minds are left to doubt . . . its meaning, interpretation, and application in relation to [West Virginia Code] § 17C-4-1(a)." We disagree.

In 2010, the Legislature exercised its authority to define a crime[13] when it modified and reenacted West Virginia Code § 17C-4-1 by amending the language of the statute, specifically changing the phrase "involved in an accident" to "involved in a crash." While the Legislature did not define "crash," this lack of definition does not render the statute ambiguous. *See State v. Sulick*, 232 W. Va. 717, 724, 753 S.E.2d 875, 882 (2012) ("[W]e note that there are instances, such as the present one, where the language used by the Legislature may be plain but where it has failed to define a certain word or phrase."). We have held that in the absence of any definition, "words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984). *See also State v.*

_____

[13] This Court has held that "[t]he Legislature has power to create and define crimes and fix their punishment[.]" Syl. Pt. 2, in part, *State v. Woodward*, 68 W. Va. 66, 69 S.E. 385 (1910)." We have "consistently held that subject to certain constitutional limitations there exists in the Legislature the broad right to define crimes and their punishment." *State v. Butler*, 239 W. Va. 168, 173, 799 S.E.2d 718, 723 (2017). *Accord State ex rel. Cogar v. Kidd*, 160 W. Va. 371, 234 S.E.2d 899 (1977); *State ex rel. Heck's v. Gates*, 149 W. Va. 421, 141 S.E.2d 369 (1965); *State v. Painter*, 135 W. Va. 106, 63 S.E.2d 86 (1950).

11

*Soustek*, 233 W. Va. 422, 426, 758 S.E.2d 775, 779 (2014) ("In determining what undefined words and terms in a statute mean, undefined words and terms are given their common, ordinary and accepted meaning." (quotations and citation omitted).

Applying these principles to West Virginia Code § 17C-4-1, we look to the common, ordinary meaning of the term "crash." According to Merriam-Webster's Dictionary, the term "crash" is defined as "a breaking to pieces by or as if by collision."[14] *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/crash (last visited Nov. 16, 2022). The New Oxford American Dictionary ascribes similar meaning, defining "crash" as "a violent collision, typically one of vehicle with another or with an obstacle." New Oxford American Dictionary 404 (3rd ed. 2010).

To the extent that Mr. McClain is also arguing that the phrase "involved in a crash" is ambiguous, that argument is also meritless. Again, that the word "involved" is not defined in the statute does not necessarily make the statute ambiguous. According to Merriam-Webster's Dictionary, the term "involved" means "having a part in something" or "included in something." *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/involved (last visited Nov. 16, 2022). Likewise, the New Oxford American Dictionary defines "involved" as "connected or concerned with . . .

---

[14] The term "crash" is used as a noun in the statute, and we consider the definition as a noun.

something[.]" New Oxford American Dictionary 915. The statutory language is plain, and there is no doubtfulness, doubleness of meaning, indistinctness, or uncertainty in the wording "involved in a crash."[15] Therefore, we hold that in the context of West Virginia Code § 17C-4-1 (eff. 2018), the phrase "involved in a crash" is unambiguous.[16]

---

[15] *Cf. Clancy v. State*, 313 P.3d 226, 231 (Nev. 2013) ("Although the constitutionality of the phrase 'involved in an accident' as used in [the hit-and-run statute] has never been addressed in Nevada, a number of other jurisdictions have determined that very similar language is not vague or ambiguous. In *State v. Carpenter*, 334 N.W.2d 137 (Iowa 1983), the Iowa Supreme Court held that such language was not vague or ambiguous because such terms were easily defined by reference to their common dictionary definitions. *Id.* at 139-40. The Texas Court of Appeals has held the same. *Sheldon v. State*, 100 S.W.3d 497, 500-01 (Tex. Ct. App. 2003).").

[16] Mr. McClain also relies on a Florida case, *Gaulden v. State*, 195 So. 3d 1123 (Fla. 2016), to support his position that the change in statutory language created ambiguity. In *Gaulden*, the court considered a certified question asking if a vehicle is "involved in a crash" for purposes of holding a driver criminally responsible for leaving the scene, when a passenger separates from a moving vehicle and collides with the roadway or adjacent pavement, but the vehicle has no physical contact either with the passenger, after the passenger's exit, or with any other vehicle, person, or object. *Id.* at 1125. In answering the question in the negative, the court stated that

> [i]n order to uphold Gaulden's conviction under this statute, the district court panel in *Gaulden* [*I*] expanded the interpretation of the statutory phrase "any vehicle involved in a crash" to include a passenger separating from a vehicle and colliding with the pavement. This holding is inconsistent with the Legislature's decision to narrow the statute by replacing *accident* with *crash* in [the statute]. To the degree that this alteration of the statute creates ambiguity as to the statute's applicability, this Court is required under the rule of lenity to construe it in favor of the accused.

*Id.* at 1128. However, we are not persuaded by *Gaulden*. First, there is little to no analysis of ambiguity in *Gaulden*. Second, the court was asked to consider a narrow question—whether the statutory language applied when a person jumped from a moving vehicle. *Gaulden* is factually distinguishable from the issues currently before this Court.

Next, we consider the second reformulated certified question asking whether a defendant's vehicle is required to make direct physical contact with the other vehicle or person whose death was proximately caused by the crash in order to be held criminally responsible for violating West Virginia Code §§ 17C-4-1(a) and (d). Mr. McClain contends that direct physical contact is required. We disagree.

Again, the statutory language at issue is plain and unambiguous. There is nothing in the language of the hit-and-run statute indicating that direct physical contact with a victim is required to establish criminal liability.[17] The plain language of the statute

---

[17] Mr. McClain asserts that our hit-and-run statute should be read *in pari materia* with West Virginia Code § 33-6-31(e)(3), the Uninsured Motorist Statute (UM Statute) which requires physical contact. However, the

> *in pari materia* rule of statutory construction applies . . . only when the particular statute is ambiguous: "'The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous.'" Syl. pt. 4, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984), quoting Syl. pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

*Kimes v. Bechtold*, 176 W. Va. 182, 185, 342 S.E.2d 147, 150 (1986). Because we find that West Virginia Code § 17C-4-1 is plain and unambiguous, we decline Mr. McClain's invitation to look beyond the words of the statute at issue in this case. However, even if we read the criminal hit-and-run statute in *pari materia* with the UM statute, Mr. McClain's argument still fails. We have held that "[i]n order to satisfy the 'physical contact' requirement set forth in W. Va. Code § 33-6-31(e)(iii), it is necessary to establish a close and substantial physical nexus between an unidentified hit-and-run vehicle and the insured vehicle." Syl. pt. 2, in part, *State Farm Mut. Auto. Ins. Co. v. Norman*, 191 W. Va. 498, 446 S.E.2d 720 (1994). We further explained that "the physical contact requirement

14

requires only that the individual be a driver of a vehicle involved in a crash,[18] not that the driver of a vehicle *crash into a specific victim*. As we have consistently reiterated,

> [i]t is imperative to remember that "it is not for this Court arbitrarily to read into a statute that which it does not

requires there to be actual physical contact—either direct *or indirect*[.]" *Id.* at 507, 446 S.E.2d at 729 (emphasis added).

Similarly, Mr. McClain contends that the rule of lenity is triggered. We have stated that "[i]t is generally recognized that in construing an ambiguous criminal statute, the rule of lenity applies which requires that 'penal statutes must be strictly construed against the State and in favor of the defendant.' Syl. pt. 3, *State ex rel. Carson v. Wood*, 154 W. Va. 397, 175 S.E.2d 482 (1970)." *State ex rel. Morgan v. Trent*, 195 W. Va. 257, 262, 465 S.E.2d 257, 262 (1995). Again, though, we do not find the subject statute to be ambiguous, and so the rule of lenity is inapplicable.

[18] Moreover, for a jury to convict under the hit-and-run statute when a death is involved, subsection (d), which provides that any driver who is involved in a crash that *proximately causes the death* of another person, must be satisfied. *See* W. Va. Code § 17C-4-1(d). In the criminal context, proximate cause has been defined

> as a cause: (1) which, in a natural and continuous sequence and unbroken by any new and independent cause, produces an injury; (2) without which the injury would not have occurred; and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed.

*State v. Bethea*, 605 S.E.2d 173, 178 (N.C. App. 2004). For example, Georgia has a similar hit-and-run statute which requires a driver of "any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person" to stop and provide certain information and necessary aid. Ga. Code § 40-6-270. The accident must be the "proximate cause of death or a serious injury[.]" *Id.* In discussing this section, the Supreme Court of Georgia has stated that "if the jury in a criminal trial were to determine that [a driver] caused an accident that was a substantial contributing cause of [the victim's] death, then the causation element of hit and run . . . , as set forth in OCGA §§ 40-6-270 (b) . . ., has been met irrespective of whether [the victim's] failure to wear a seatbelt was also a contributing factor or even another proximate cause of [the] death." *State v. Mondor*, 830 S.E.2d 206, 216 (Ga. 2019). The plain statutory language regarding proximate causation also supports the position that direct physical contact with a victim is not a requirement.

15

say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

*State v. Butler*, 239 W. Va. 168, 178, 799 S.E.2d 718, 728 (2017).

Furthermore, this Court "'cannot rewrite a statute so as to provide relief . . . nor can we interpret the statute in a manner inconsistent with the plain meaning of the words.' *VanKirk v. Young*, 180 W. Va. 18, 20, 375 S.E.2d 196, 198 (1988)." *McVey v. Pritt*, 218 W. Va. 537, 540-41, 625 S.E.2d 299, 302-03 (2005). As we observed in *State v. Richards*, 206 W. Va. 573, 577, 526 S.E.2d 539, 543 (1999),

> courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . it is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled or rewritten[.] . . . *See also* Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem. Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."). (internal citations and quotations omitted).

Mr. McClain's argument runs afoul of the Legislature's clear intention to hold those involved in vehicle crashes responsible for providing certain information and rendering aid, if necessary. Therefore, we now hold that to be criminally responsible pursuant to West Virginia Code §§ 17C-4-1(a) and (d) (eff. 2018), it is not a requirement that a defendant's

16

vehicle make direct physical contact with the other vehicle or person whose death was proximately caused by the crash.[19]

Lastly, we examine the third reformulated certified question inquiring if the determination of whether a defendant was "involved in a crash" as contemplated by West Virginia Code §§ 17C-4-1(a) and (d) is a question of fact. We answer the question in the affirmative.

---

[19] This position is consistent with other jurisdictions. For example, in *State v. Korovkin*, 47 P.3d 1131 (Ariz. Ct. App. 2002), the court examined a situation where a defendant was convicted under Arizona's hit-and-run statute. *Id.* at 1132. The defendant raced his vehicle against a friend's vehicle. *Id.* During the race, the friend's vehicle collided with another vehicle, killing the driver of the other vehicle. *Id.* The defendant did not have any contact with the victim. *Id.* On appeal, the defendant argued that there was insufficient evidence to convict him of leaving the scene of an accident because he did not directly collide with the victim. *Id.* at 1134. The court found that while the defendant framed his assignment of error as a sufficiency of the evidence issue, he was essentially asserting a question of law: "can [a driver] be criminally liable as a principal for leaving the scene of an accident when the car he was driving was not physically part of the collision" *Id.* at 1135. Considering the common, ordinary definition of "involve," the court concluded that "a driver who races another driver who collides with a third vehicle actively participates in the immediate chain of events culminating in the collision and, by any measure, has been a participant and is implicated and entangled in the accident, notwithstanding any absence of actual physical contact with the struck vehicle." *Id. Accord State v. Sene*, 128 A.3d 175, 179 (N.J. Super. App. Div. 2015) ("Coupling those words in the phrase 'involved in an accident' does not suggest that defendant's vehicle needed to come into contact with the victim. Instead, the plain reading of those words means that a driver whose actions contribute to an accident, and who knows of the causal relationship, must not leave the scene of the accident."). While these cases address statutes using "accident" as opposed to a "crash," the analysis focused on the word "involve." As such, we find them persuasive.

The plain language of the statute requires, among other elements not relevant to the issue before us, that to convict a defendant pursuant to the hit-and-run statute, the State must prove that the defendant drove a vehicle *that was involved in a crash*.[20] *See* W. Va. Code § 17C-4-1(a). Consequently, the determination of whether an individual was "involved in a crash" is an essential element of the crime of leaving the scene of a crash.[21]

As we have previously stated, "[i]t is a foundation of criminal law that '[t]he State must prove all the elements of a crime beyond a reasonable doubt.' *State v. Less*, 170 W. Va. 259, 264, 294 S.E.2d 62, 66 (1981)[.]" *State v. Joseph*, 214 W. Va. 525, 529, 590 S.E.2d 718, 722 (2003). In other words, in a criminal proceeding, it is the jury's province to determine whether an element of a crime is satisfied. *See State v. Easton*, 203 W. Va.

---

[20] West Virginia Code § 17C-4-1(a) sets forth additional elements that the State must prove. *See* W. Va. Code § 17C-4-1(a). Further, West Virginia Code §§ 17C-4-1(b), (c), and (d) provide for elements of knowledge and proximate cause, depending on the circumstances, that must also be proven to convict under the hit-and-run statute. *See* W. Va. Code §§ 17C-4-1(b), (c), and (d).

[21] *See e.g.*, *State v. Montoya Guzman*, 96 P.3d 1173, 1178 (N.M. Ct. App. 2004) ("In order to convict Defendant of accidents involving death or personal injuries, the State was required to prove that Defendant (1) operated a motor vehicle; (2) was involved in an accident which caused great bodily harm or death of the victim; (3) failed to stop and/or failed to remain at the scene of the accident; and (4) failed to render reasonable aid to the victim. NMSA 1978, § 66-7-201 (1989); NMSA 1978, § 66-7-203 (1978)."); *Gillie v. State*, 181 S.W.3d 768, 770-71 (Tex. App. 2005) ("The elements of the offense charged are: (1) an operator of a vehicle; (2) intentionally or knowingly; (3) involved in an accident; (4) resulting in damage to a vehicle; (5) fails to stop or provide the required information. *See* TEX. TRANSP. CODE ANN. §§ 550.022(c), 550.023 (Vernon 1999); *Steen v. State*, 640 S.W.2d 912, 915 (Tex.Crim.App.1982); *St. Clair v. State*, 26 S.W.3d 89, 98-99 (Tex. App.-Waco 2000, pet. Ref'd).").

18

631, 638, 510 S.E.2d 465, 472 (1998) ("'"The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Point 2, Syllabus, *State v. Bailey*, 151 W. Va. 796[, 155 S.E.2d 850 (1967)].' Syl. pt. 3, *State v. Knotts*, 156 W. Va. 748, 197 S.E.2d 93 (1973)."). *See also Bellamy v. Edwards*, 354 S.E.2d 434, 438 (Ga. App. 1987) ("The jury was clearly authorized to find that appellant was 'involved' in the collision at issue."); *Clarke v. Galdamez*, 789 S.E.2d 106, 109 (Va. 2016) ("To convict a defendant of a violation of [the hit-and-run] statute the jury or fact-finder must find: (1) that the defendant was the driver of a vehicle that he knew was involved in an accident[.]"). Therefore, we hold that the determination of whether a defendant is "involved in a crash" pursuant to West Virginia Code § 17C-4-1 (eff. 2018) is a question of fact.

## IV.

## CONCLUSION

For the reasons explained herein, we answer questions one and two, as reformulated, in the negative and question three, as reformulated, in the affirmative. We remand this case to the Circuit Court of Monongalia County for further proceedings consistent with this opinion.

Certified Questions Answered.